**ORDERED** that the Territorial Court's order of dismissal is **VACATED**; it is further

**ORDERED** that this case is remanded to the Territorial Court for further proceedings consistent with this opinion.

**Patrick C. RYAN, Plaintiff,**

v.

**UNITED STATES of America, et al., Defendants.**

**No. CIV. AMD 02–2335.**

United States District Court, D. Maryland.

May 12, 2003.

Robert M. Schwartzman, Lord and Whip PA, Baltimore, MD, for Plaintiff.

Robert B. Hetherington, McCarthy Wilson, Rockville, MD, Robert H. Bouse, Jr., Anderson Coe and King LLP, David W. Skeen, Stephen F. White, Wright, Constable and Skeen LLP, Baltimore, MD, for Defendant.

## MEMORANDUM

DAVIS, District Judge.

Plaintiff, Patrick C. Ryan, an employee of a firm working on a government contract at the United States Naval Air Station in Southern Maryland, was severely injured in an on-the-job accident. He filed this one count action for damages against the following parties: (1) the United States of America and the Department of the Navy ("the government"); (2) his employer, Chesapeake Bay Diving, Inc. ("Chesapeake"); (3) Noesis, Inc.; (4) General Dynamics Corporation ("General Dynamics"); and (5)American Systems Corporation ("ASC"). Ryan relies on a plethora of statutory and common law theories sounding in negligence under the Suits in Admiralty Act ("SAA"), 46 App. U.S.C. §§ 741–52; the Public Vessels Act ("PVA"), 46 App. U.S.C. §§ 781–90; the Jones Act, 46 U.S.C. § 688; the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 905(b) and 933; the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671–80; and state law.

Now pending are the government's motions to dismiss, or in the alternative, for summary judgment, seeking dismissal of Ryan's amended complaint (and other defendants' cross-claims against the government) for lack of subject matter jurisdiction. I conducted a hearing on May 9, 2003, and I have fully considered all of the parties' arguments and evidentiary materials. For the reasons set forth herein, I find that the United States has not waived its sovereign immunity as to any claim asserted against it in this case and thus I shall grant the government's motion to dismiss.

## I.

At the time of his accident, on July 15, 2000, Ryan was a seaman who was employed by Chesapeake as a diver and member of the crew of a diving boat owned and/or operated by Chesapeake. Ryan, who also claims to be a "borrowed servant" of Noesis and perhaps of other defendants, alleges that the pier on which he was injured while performing duties within the scope of his employment was "owned, operated, leased, and/or controlled by the [government]."

At all times relevant to the events in suit, the General Services Administration ("GSA") had a contract with ASC pursuant to which ASC undertook to provide maintenance and technical engineering support for federal government agencies, including the Patuxent River Naval Air Station (through the Department of the Navy), for a period of five years from 1997 to 2002. It seems to be largely undisputed that, in respect to its contractual duties, ASC was an independent contractor and not "an agent or employee of the Government." According to the contract, ASC agreed to "guarantee[ ] the satisfactory completion of the IT [ (information technology) ] Professional Services performed under the task order and that all contract personnel utilized in the performance of IT Professional Services under the task order shall have the education, experience, and expertise as stated in the task order."

In early 2000, the Navy requested ASC's services for "information technology (IT) test and evaluation (T & E) support" under the GSA contract. The delivery order contained a "Statement of Work" that required ASC "to maintain the government facilities, including the pier and

synchrolift,[1] at the Patuxent River Naval Air Station for the period of time from January 24, 2000, through September 30, 2000." Under the order, ASC was required to provide "integrated logistics support including oversight and coordination related to the operation, maintenance, and access of government facilities, ... and grounds; custodial duties; and as required, use government vehicles, forklift, overhead crane, and synchrolift." ASC was also required to report emergency situations involving the facilities and property. The government alleges that the "delivery order [further] delegated to [ASC] the manner of accomplishing the maintenance and technical assistance." ASC had a separate contract with the government to serve as a "property manager" with responsibilities to maintain the Naval Station site. At around this same time, defendant General Dynamics had a separate contract with the government in respect to a new amphibious assault vehicle. In turn, apparently, General Dynamics had subcontracts with Chesapeake and/or with Noesis for the performance of certain tasks.

Ryan was employed by Chesapeake as a diver, however, on the day of his accident, he was not performing tasks as a diver for Chesapeake. Rather, he alleges that on the day of his accident, he "had been directed to use a tow tractor [weighing more than ten thousand pounds] to assist in cleaning the pier area in preparation for a visit by the Commandant of the United States Marine Corps." In other words, it appears, Noesis, who had the responsibility to clean up the pier for a visit by a high-ranking military officer, was utilizing Ryan as an alleged "borrowed servant" (i.e., borrowed from Chesapeake) at the time of Ryan's accident. Ryan attests generally

that he "was performing work on orders from *above*, which *apparently* came from the Marine Corps, to clean the pier for a visit by a high-ranking officer in the Marine Corps." Ryan further alleges that the "pier's wooden decks collapsed under the tractor's weight" when he attempted to drive the tractor onto the syncrolift to turn around on the pier. When the wooden deck collapsed, the tractor fell through an opening of in the pier into the water and Ryan's lower leg was partially amputated. Ryan has received substantial benefits under worker's compensation laws, and seeks in this action to fasten liability for his accident upon such parties as may be amenable to the imposition of liability in this third party tort action.

## II.

◼ The determination of jurisdiction is a threshold issue; the plaintiff in an action has the burden of proving that subject matter jurisdiction exists. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.") (internal quotations omitted) (quoting *Ex parte McCardle*, 7 Wall. 506, 514, 19 L.Ed. 264 (1868)); *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995); *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir.1991); *McKeel v. United States*, 178 F.Supp.2d 493, 496 (D.Md. 2001). When the government challenges the court's subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), "the plaintiff bears the burden of persuasion and must demonstrate an unequivocal waiver

1. A synchrolift is a submersible mechanism, apparently operated hydraulically, that lifts small watercraft from the water to a rail assembly on the pier for further transport to a nearby building via the rails.

of sovereign immunity." *McKeel,* 178 F.Supp.2d at 496 (citing *Williams,* 50 F.3d at 304). In ruling on a rule 12(b)(1) motion, "the court is free to consider and to weigh evidence outside of the pleadings to determine its power to hear the case." *Id.* A district court should grant a Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg & Potomac R. Co.,* 945 F.2d at 768 (citing *Trentacosta v. Frontier Pac. Aircraft Indus.,* 813 F.2d 1553, 1558 (9th Cir.1987)).

Moreover, "a waiver of the Government's sovereign immunity will be strictly construed, in terms of scope, in favor of the sovereign." *Williams v. United States,* 242 F.3d 169, 172 (4th Cir.2001) (quoting *Lane v. Pena,* 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996)); *see Ammer v. United States,* 881 F.Supp. 1007, 1010 (D.Md.1994) ("[T]he terms of [the government's] consent to be sued in any court define that court's jurisdiction to entertain the suit.") (citing *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941)). Specifically, Ryan alleges federal jurisdiction under the FTCA, SAA, and PVA. Although the FTCA usually provides a waiver of sovereign immunity in tort actions against the government, the FTCA is expressly inapplicable as to an admiralty claim. 28 U.S.C. § 2680(d). Admiralty claims against the United States are cognizable under the SAA, 46 App. U.S.C. §§ 741–52, and the PVA, 46 App. U.S.C. §§ 781–90.

### III.

"The authority of federal courts to hear cases in admiralty stems directly from the [United States] Constitution, which extends federal judicial power 'to all Cases of admiralty and maritime Jurisdiction.'" *White v. United States,* 53 F.3d 43, 45 (4th Cir.1995) (quoting U.S. Const. art. III, § 2); *see Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, 531, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995). "Congress has codified this power, vesting in the federal district courts original and exclusive jurisdiction over '[a]ny civil case of admiralty or maritime jurisdiction.'" *White,* 53 F.3d at 45 (quoting 28 U.S.C. § 1333(1)).

■ The applicable test as to whether a tort claim lies within the admiralty jurisdiction is two-pronged, that is, the plaintiff must satisfy two conditions, namely, (1) location and (2) "connection with maritime activity." *Grubart,* 513 U.S. at 532, 115 S.Ct. 1043; *Sisson v. Ruby,* 497 U.S. 358, 362, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990); *David Wright Charter Serv., Inc. v. Wright,* 925 F.2d 783, 784 (4th Cir.1991); *Foster v. Peddicord,* 826 F.2d 1370, 1374 (4th Cir.1987), *cert. denied,* 484 U.S. 1027, 108 S.Ct. 753, 98 L.Ed.2d 766 (1988). To satisfy the location test, the tort must occur on navigable waters, or, if the injury is suffered on land, at least be caused by a vessel on navigable water. *White,* 53 F.3d at 45 (citing *Grubart,* 513 U.S. at 527, 532, 115 S.Ct. 1043 (citing *Sisson,* 497 U.S. at 362–63, 110 S.Ct. 2892)); 46 App. U.S.C. § 740. To satisfy the connection with maritime activity test, "the facts giving rise to the wrong must bear a sufficient connection to maritime activity." *White,* 53 F.3d at 46. This inquiry requires that the "court first determine whether 'the general features of the type of incident involve' have 'a potentially disruptive impact on maritime commerce,' and second, 'whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity.'" *Id.* (quoting *Grubart,* 513 U.S. at 534, 115 S.Ct. 1043).

■ In this case, to satisfy the locality prong, Ryan must first establish that the injuries he suffered either were incurred

on navigable waters, or, if suffered on land, were caused by a vessel on navigable water. *Grubart,* 513 U.S. at 527, 532, 115 S.Ct. 1043. The government argues, and I agree, however, that Ryan cannot meet the locality prong because his injuries were suffered on a pier (considered an extension of land), but they were not caused by a vessel on navigable water. *Grubart,* 513 U.S. at 527, 532, 115 S.Ct. 1043. Ryan correctly recognizes that, "although the courts, at one time, treated piers as an extension of the land, *Martin v. West,* 222 U.S. 191, 197, 32 S.Ct. 42, 56 L.Ed. 159 (1911), this rule was changed in 1948, when Congress passed the Extension of Admiralty Jurisdiction Act." Ryan incorrectly assumes, however, that injuries suffered on a pier without the involvement of a "vessel on navigable water" fall within the purview of this court's admiralty jurisdiction.

The Fourth Circuit has held that courts should look to "the place where the accident which ultimately gave rise to the cause of action was 'initiated.'" *White,* 53 F.3d at 47 (locality satisfied where a subcontracted security guard disembarked a vessel from the gangway to the dock) (citing *Whittington v. Sewer Const. Co.,* 541 F.2d 427, 432 (4th Cir.1976)). In this instance, Ryan was operating a tow tractor on a pier when the pier's wooden planks collapsed and his leg was partially amputated as the tractor fell on him and into the water. Based on the undisputed manner in which the accident occurred, it is clear that the injury was "initiated" on the pier and was not caused by a "ship or vessel on navigable water." 46 App. U.S.C. § 740; *Grubart,* 513 U.S. at 532, 115 S.Ct. 1043; *White,* 53 F.3d at 47.

As Ryan cannot establish the locality prong for admiralty jurisdiction, I need not reach the issue whether Ryan can demonstrate that his claims have a "connection with maritime activity;" *both* prongs of the

jurisdictional test must be satisfied to invoke this court's admiralty jurisdiction. *Grubart,* 513 U.S. at 532, 534, 115 S.Ct. 1043; *see, e.g., Executive Jet Aviation, Inc. v. Cleveland,* 409 U.S. 249, 266–68, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972) (declining to determine whether locality existed where a plane struck sea gulls over land but actually fell in Lake Erie's navigable waters, and instead finding that a "connection with maritime activity" did not exist). Because Ryan in unable to allege facts sufficient to satisfy the locality inquiry, his attempt to invoke this court's admiralty jurisdiction fails. *Grubart,* 513 U.S. at 532, 115 S.Ct. 1043. Accordingly, because I find that this court does not have admiralty jurisdiction in this case, Ryan's claims alleged under 46 App. U.S.C. §§ 741–52, and 46 App. U.S.C. §§ 781–90, against the government fail.

### IV.

■ Ryan also alleges that he has a claim against the government under the Jones Act. *See* 46 App.U.S.C. § 688. The Jones Act provides a cause of action against the employer of a seaman injured in the course of his employment. *Id.; Wheatley v. Gladden,* 660 F.2d 1024, 1026 (4th Cir.1981). Jones Act actions may only be brought against a seaman's employer, but a plaintiff can only assert a Jones Act claim against one employer. *See Mitola v. Johns Hopkins Univ. Applied Physics Lab.,* 839 F.Supp. 351, 354–55 (D.Md.1993) ("[A] 'seaman' is entitled to sue his employer, and only the single entity determined to be his employer, for negligence pursuant to the Jones Act."); *see also Cosmopolitan Shipping Co. v. McAllister,* 337 U.S. 783, 791, 69 S.Ct. 1317, 93 L.Ed. 1692 (1949).

■ The record leaves no doubt that any claim Ryan purports to allege against the government under the Jones Act must fail because Ryan cannot establish that he

was a federal employee, whether or not he might have a Jones Act claim against Noesis, Inc., or one of the other defendants under the "borrowed servant" doctrine. *See White v. Bethlehem Steel Corp.*, 222 F.3d 146, 149 (4th Cir.2000) (citing *Standard Oil Co. v. Anderson*, 212 U.S. 215, 221–22, 29 S.Ct. 252, 53 L.Ed. 480 (1909)). Certainly, Ryan's generalized assertions in his affidavit regarding his work assignment that are based solely on his "beliefs" are insufficient to generate a dispute of fact as to whether he was under the control of the government.[2]

## V.

Ryan alleges that, because he has "rightfully alleged a cause of action under LHWCA[3] against his employer" (presumably Chesapeake Bay or Noesis), he has preserved a separate negligence cause of action against "any responsible third party for which he might be owed compensation"—for purposes of this motion, the government. A plaintiff can bring a tort action under the LHWCA against a third party that does not sound in admiralty as long as he establishes a separate jurisdictional basis for the action. *See Anuszewski v. Dynamic Mariners Corp., Panama*, 540 F.2d 757, 758 (4th Cir.1976) (stating that amendments to LHWCA were designed to place an employee injured aboard a vessel in the same position he

would be in if he were injured in non-maritime employment ashore, insofar as bringing a third party damage action is concerned); *Ward v. Norfolk Shipbuilding and Drydock Corp.*, 770 F.Supp. 1118, 1121–22 (E.D.Va.1991) (determining that, even in the absence of a federal statutory cause of action for negligence against a non-vessel third party, a federal maritime negligence cause of action does exist for a harbor worker against a non-vessel third party; but, harbor worker was injured while performing traditional maritime activity).

Because this action does not sound in admiralty, however, Ryan must establish a jurisdictional basis for bringing suit against the government that also establishes a waiver of the government's sovereign immunity. Ryan argues that his jurisdictional basis is established through the FTCA. *See Hyman v. United States*, 796 F.Supp. 905, 906 (E.D.Va.1992) ("The Federal Tort Claims Act does not create a separate cause of action; it simply waives sovereign immunity and allows the United States to be sued in the same manner as a private person under the law of the place of the tort.") (citing 28 U.S.C. § 1346(b)). For the reasons addressed in the following section, however, I find that the government has not waived its sovereign immunity under the FTCA.

---

**2.** I note that, by his own account, Ryan's duties on the day of his accident were solely confined to using a tow tractor to assist in cleaning the pier and he was not acting in the capacity of "seaman" when he was injured. *McDermott Int'l, Inc.*, 498 U.S. at 355, 111 S.Ct. 807. As is required by the Jones Act to prove "seaman status," Ryan cannot establish that his duties "contribute[d] to the function of the vessel or to the accomplishment of its mission." *Id.* at 355, 356–57, 111 S.Ct. 807 (internal quotations omitted) (determining that "a paint foreman injured on an oil drilling platform in the Persian Gulf while assigned to a '*paint boat*' carrying his painting equipment qualified as a Jones Act seaman")

(emphasis added). In short, Ryan was not "doing the ship's work" at the time of his injury. *Id.* at 355, 111 S.Ct. 807.

**3.** The LHWCA provides a federal workers' compensation remedy for a broad category of shore-based maritime workers. 33 U.S.C. §§ 905(b), 933. The LHWCA, with some exceptions not relevant to this case, covers "any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harbor-worker including a ship repairman, shipbuilder, and ship-breaker." 33 U.S.C. § 902(3) (defining "employee" under the LHWCA).

## VI.

■ The United States cannot be held liable for tortious conduct unless it has waived its sovereign immunity by the express terms of the FTCA. 28 U.S.C. §§ 1346(b), 2671–2680; *Williams v. United States*, 50 F.3d 299, 305 (4th Cir.1995) (explaining how the FTCA grants a limited waiver of the government's sovereign immunity and permits recovery against the United States for the tortious acts or omissions of government agents or employees). The FTCA mandates that the district courts:

> shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). The government's liability under the FTCA does not, however, extend to the negligence of independent contractors. *See Logue v. United States*, 412 U.S. 521, 529–30, 532, 93 S.Ct. 2215, 37 L.Ed.2d 121 (1973); *Williams*, 50 F.3d at 305–06. Thus, if ASC (whose "negligence" in maintaining or repairing or inspecting the pier allegedly caused Ryan's injuries) is an "independent contractor," the government has not waived its sovereign immunity under the FTCA and the case must be dismissed for lack of subject-matter jurisdiction. 28 U.S.C. § 1346(b); *Williams*, 50 F.3d at 304.

The government's liability under the FTCA can also be limited by the "discretionary function" exception to the FTCA's waiver of sovereign immunity. 28 U.S.C. § 2680(a). Section 2680(a) exempts the United States from liability under the FTCA for acts of its employees "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the government, whether or not the discretion involved be abused." *Id.*

### A.

■ The language of the FTCA protects the government from liability arising out of tortious conduct by independent contractors. *McKeel*, 178 F.Supp.2d at 497; 28 U.S.C. § 1346(b). Whether an entity is an independent contractor is a question of federal law. *Id.; Logue*, 412 U.S. at 528, 93 S.Ct. 2215. When courts determine whether an entity is an independent contractor, "the critical inquiry is whether the government has the power to control the detailed physical performance of the contractor, *United States v. Orleans*, 425 U.S. 807, 814, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976) (quoting *Logue*, 412 U.S. at 528, 93 S.Ct. 2215), or whether the government supervises the 'day-to-day' operations of the project." *McKeel*, 178 F.Supp.2d at 497 (internal quotations omitted); *see Logue*, 412 U.S. at 530, 93 S.Ct. 2215. In short, to overcome the independent contractor exception, a claimant must establish that the "government 'managed the details' or ran the 'daily routine' of the activities constituting the alleged tortious conduct." *McKeel*, 178 F.Supp.2d at 497; *see Williams*, 50 F.3d at 306–07 (citations omitted).

The government argues that it contracted with ASC to "maintain the property at Patuxent River Naval Air Station, including the pier and synchrolift."[4] Further,

---

**4.** The record includes a declaration from test engineer Louis Ferguson who attests that the

the government states that the requirements of the work that ASC was to perform are specified in the "Order for Supplies or Services," but the "control of the actual work was the responsibility of ASC." ASC is identified as a "contractor" on the "Order for Supplies or Services" dated March 1, 2000, and the order does not specify any "day-to-day" operations or routine that must be performed. ASC is also identified as an "independent contractor" on its "Information Technology Professional Services Authorized Schedule Pricelist."

In the "Information Technology (IT)/ Test and Evaluation (T & E) Support for Combatant Craft" statement of work, the scope of work to be performed by ASC includes "provid[ing] technical engineering support primarily at U.S. Naval Air Station, Patuxent River, MD . . . ." The description of work in this same document states that the:

> specific requirements of this task include, but is not limited to, facility inte-

grated logistics support including *oversight and coordination related to the operation, maintenance, and access of government facilities, combatant craft, vessels, buildings, spaces, and grounds; custodial duties;* updating and validating the inventory data base and integrated logistics support, inventory, shipping, and receiving, screening and disposal of government property . . . and as required use government vehicles, forklift, overhead crane, synchrolift, combatant craft, boats, and launch operations.

(emphasis added). ASC was also responsible for complying with "all laws, ordinances and regulations covering their work" and reporting emergency situations "involving the facilities and property."

 In the face of this overwhelming evidence, I find Ryan's arguments that the federal defendants cannot avoid liability under the FTCA based on the independent contractor exception unconvincing. Ryan identifies seven factors[5] that "[d]istrict

---

Marine Corps Advanced Amphibious Assault Vehicle ("AAAV") was being tested in the waters in and around the Patuxent River Naval Station in July 2000. Several marines and civilian employees of the Marine Corps worked with General Dynamics employees to test the AAAV. The government had a contract with Noesis (who sub-contracted with Chesapeake—Ryan's employer) to provide diver support for the AAAV team. Ferguson further states that the government contracted with ASC to provide daily logistic support to the AAAV team, and describes meetings that occurred where the AAAV team and contracted employees discussed daily plans but did not receive specific instruction about "how to perform its job" or "the manner and method of [ASC's] or the divers' work." Although Ryan was not working in his capacity as a diver when he was injured, Ferguson flatly refutes Ryan's implied assertion that a Marine Corps officer instructed Ryan to clean the pier on July 15, 2000. Ferguson's unrebutted declaration wholly supports the government's contention that ASC is, in fact, an independent contractor.

5. The seven factors include (1) intent of the parties, (2) whether the United States controls the end result or the manner of reaching the result, (3) whether the contractor uses his own equipment, (4) who provides liability insurance, (5) who pays social security taxes, (6) whether federal regulations prohibit federal employees from performing the contract, and (7) whether the individual has authority to subcontract with others. *See Curry v. United States*, 97 F.3d 412, 414 (10th Cir.1996) (citing *Lilly v. Fieldstone*, 876 F.2d 857, 859 (10th Cir.1989)). Because this case is not controlling on this court, I will only note that Ryan provides no evidence to support three of the seven factors, and of the remaining four factors, I find that [as to factor (1)] the federal defendants intended to contract with ASC, [as to factor (2)] Ryan may have used government equipment, but no federal employee controlled or directed the precise manner in which the individual tasks were completed, and [as to factor (3)] ASC was authorized to subcontract, namely with Noesis and Chesapeake Bay. Thus, even under *Curry*, the government would retain the protection provided by the independent contractor exception.

courts look to ... when making a determination that the federal government has exercised a sufficient degree of control and supervision" such that immunity is waived under the independent contractor exception, see *Curry,* 97 F.3d at 414 (citing *Lilly,* 876 F.2d at 857), but makes no attempt to apply the factors to the facts of this case. Furthermore, as mentioned above, the conclusory statements in Ryan's affidavit do not support his contentions. Ryan does not identify any federal employee who specifically instructed him to clean the pier on July 15, 2000, or what federal employees were instructed to work "side-by-side" with him. Along the same lines, the statement of work does not (1) detail specific custodial duties, (2) discuss how ASC should maintain and provide access to the Naval Air Station, or (3) describe the specific equipment that must be used to accomplish each aspect of the task(s). Thus, I am persuaded that the government's activities, if any, on the day of the accident (or at any other time) vitiated the application of the independent contractor exception under the FTCA.

ASC advances a slightly different argument in an attempt to avoid the independent contractor exception, but to no avail. ASC explains that, "while [it] did contract to perform certain support services at Patuxent River, it was not responsible for monitoring or maintaining the structural safety of the government property in question—the pier that collapsed on July 15, 2000." The gravamen of ASC's argument seems to be that the government cannot avoid liability for Ryan's injuries under the independent contractor exception because ASC was not required to "monitor and evaluate [the] structural integrity or dete-

rioration" of the pier, and all "significant repair or maintenance work done to the facilities at Patuxent River was undertaken at the request and direction of the Government."

There are four separate statements of work directing ASC to perform the tasks under the general GSA contract for specific overlapping periods of time.[6] Each statement includes the task of providing "facility-integrated logistics support including oversight and coordination related to the operation, maintenance and access of government facilities." ASC takes issue with this specific task description because, it argues, it does not and was not intended to include the responsibility of structural maintenance of the pier. The statements of work, however, describe the task instructions as including maintenance and access to "vessels, buildings, spaces, and grounds," custodial duties, and identifies the equipment that may be used to accomplish these tasks, and the federal defendants interpret these instructions as requiring structural pier maintenance.

ASC relies heavily on the July 1999 memorandum from John Hoyt (a federal employee) acknowledging that some of the synchrolift platform planks were missing or were in a weakened and unsafe condition. It is clear as a matter of law, however, that the Hoyt memorandum must be read in conjunction with the declaration of James Lewis, and when so viewed, the record completely defeats ASC's argument. Neither ASC nor Ryan offer any evidence that the problem with the synchrolift planks was not corrected. To the contrary, the Lewis Declaration establishes that he received the Hoyt letter,

---

**6.** Although the parties have included four statements of work that ASC agreed to perform at the Patuxent River Naval Station and the three performance periods are slightly different, all include July 15, 2000, the date Ryan's injuries occurred. The scope or description of work in each of the four statements of work is substantially similar for purposes of this discussion. Further, each statement of work is encompassed under the general ASC contract with GSA.

directed ASC to make all necessary repairs, and that the repairs were completed by the end of November 1999 (a date encompassed by the general GSA contract with ASC and one of the specific statements of work). Thus, the Lewis Declaration is direct evidence of ASC's responsibilities under the contract, regardless of how ASC actually received instructions to complete its tasks. *See also* Declaration of Charles "Buddy" Guy (stating that he was employed by ASC as a Building Facilitator for the Naval Station and was responsible for inspecting the grounds and subcontracting (with Johnson Controls) to complete building and pier repairs).

ASC does not shed its status as an independent contractor merely because the federal defendants may have specified the requirements of the work to be performed and assured that certain government standards were met. *See Robb v. United States,* 80 F.3d 884, 887 (4th Cir.1996) (acknowledging that the independent contractor exception to the waiver of sovereign immunity is broadly construed); *see also, e.g., Yates v. United States,* 365 F.2d 663, 666 (4th Cir.1966) (after hiring independent contractor to do heavy maintenance work on transport planes, Air Force did not retain sufficient control over premises to render it liable for injuries sustained by contracted employee who slipped on a dolly); *Harris v. United States,* 424 F.Supp. 627, 629, 631 (D.Mass.1976) (Department of Housing and Urban Development not liable for injuries sustained in a fall on a defective stairway in apartment building managed by a contracted management broker). Accordingly, I am not persuaded by ASC's arguments that maintaining the pier (structurally or otherwise) was beyond the scope of their contract, or that the federal defendants exercised significant control over their daily routine such that ASC was no longer an "independent" contractor.

Moreover, Ryan's argument that the government has a "non-delegable duty to provide a safe work place for [Ryan] and the other employees working in this area of [the Naval Station] ...," has no basis in law and must fail. *McKeel,* 178 F.Supp.2d at 499–500 (explaining that "the FTCA exception for independent contractors preempts state law nondelegable duties" in response to plaintiff's argument that the government had a nondelegable duty to warn invitees of dangers located on the premises) (citing *Berkman v. United States,* 957 F.2d 108, 112–13 (4th Cir. 1992)); *see also Roditis v. United States,* 122 F.3d 108, 111 (2d Cir.1997) (stating that, "in adopting the independent contractor exception to liability, Congress did not simultaneously adopt the exceptions to that doctrine"); *Norman v. United States,* 111 F.3d 356 (3d Cir.1997) (adopting the Fourth Circuit's reasoning that a state nondelegable duty cannot override the sovereign immunity of the United States). For all of these reasons, the government is shielded from liability in respect to Ryan's unfortunate accident by the independent contractor exception, despite the fact that the accident occurred on premises under the general control of the government.

## B.

In the alternative, even if I were to find that the independent contractor exception is not satisfied, the government is, nevertheless, protected from liability under the discretionary function exception to the FTCA. The Fourth Circuit has consistently held that the discretionary function exception provides broad protection for the United States and limits the liability of the government under the FTCA. *McKeel,* 178 F.Supp.2d at 500 (citing *Bowman v. United States,* 820 F.2d 1393 (4th Cir.1987)). By its explicit terms, the FTCA does not impose liability upon the United States for acts or omissions of government employ-

ees "'based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the government, whether or not the discretion involved be abused.'" *McKeel,* 178 F.Supp.2d at 500 (citing 28 U.S.C. § 2680(a)). The exception does not apply, however, if "'a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow.'" *Id.* (citing *Williams,* 50 F.3d at 309 (quoting *Berkovitz v. United States,* 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988))); *see, e.g., In re Sabin,* 984 F.2d 124 (4th Cir.1993) (violation of standards regarding testing of polio vaccine); *Musick v. United States,* 768 F.Supp. 183 (W.D.Va.1991) (violation by Air Force pilot of mandatory squadron policy regarding minimum flying altitude).

The Supreme Court adopted a two-pronged test for determining the applicability of this exception in *Berkovitz,* 486 U.S. at 537, 108 S.Ct. 1954, and *United States v. Gaubert,* 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). *McKeel,* 178 F.Supp.2d at 500. The first prong involves determining whether the alleged acts or omissions are discretionary in nature, *i.e.,* those involving judgment or choice. *Id.* (citing *Williams,* 50 F.3d at 309 (citing *Gaubert,* 499 U.S. at 324, 111 S.Ct. 1267)). This determination rests upon whether the government conduct is governed by a mandatory statute, regulation or policy. If a mandatory rule applies, then the conduct does not involve discretion and the claim is not barred by the discretionary function exception. *Id.* (citing *Berkovitz,* 486 U.S. at 546, 108 S.Ct. 1954). If no such mandatory statute, regulation or policy applies, then the second prong of the *Berkovitz–Gaubert* test must be examined. *Id.*

The second prong requires that the discretion be "based on considerations of public policy." *McKeel,* 178 F.Supp.2d at 500–

01 (quoting *Berkovitz,* 486 U.S. at 531, 108 S.Ct. 1954); *Gaubert,* 499 U.S. at 316, 111 S.Ct. 1267. If the discretionary actions are determined to further a public policy or regulatory scheme then the exception applies. *Id.* When resolving this inquiry, court's focus on whether the government's discretion is "of the nature and quality that Congress intended to shield from liability." *Williams,* 50 F.3d at 309 (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 813, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984)). The Fourth Circuit has noted that this is not a fact-based inquiry; rather, the court should "look to the nature of the challenged decision in an objective, or general sense, and ask whether that decision is one which we would expect inherently to be grounded in considerations of policy." *McKeel,* 178 F.Supp.2d at 501 (quoting *Baum v. United States,* 986 F.2d 716, 721 (4th Cir.1993)). The Fourth Circuit further stated that the absence of a deliberative process is not relevant to an inquiry under the discretionary function exception. *Id.; Baum,* 986 F.2d at 721 ("[W]e find it largely irrelevant the presence or absence of evidence that involved government agents which did or did not engage in a deliberative process before exercising their judgment."). Thus, the focus of the inquiry is on "the nature of the actions taken and on whether they are susceptible to policy analysis." *Id.* (citing *Gaubert,* 499 U.S. at 325, 111 S.Ct. 1267).

Ryan argues that, "until there has been further discovery and investigation, it is not clear whether the [federal defendants'] actions were regulated by statute or agency policy." Ryan contends that, until additional discovery is completed to determine the work that was to be performed on the synchrolift under the contract and the condition of the pier on the day of the accident, the federal defendants' motion is

"premature." I disagree. The determination of jurisdiction is a threshold issue. *See Steel Co.,* 523 U.S. at 94, 118 S.Ct. 1003; *Richmond, Fredericksburg & Potomac R. Co.,* 945 F.2d at 768.

ASC argues that the federal defendants cannot satisfy the discretionary function exception because "the tortious conduct alleged by [Ryan] fell outside the scope of the [ASC'] contract," and that it is not within the federal defendants' "discretion" to "fail to act" with respect to maintaining the structural integrity of the pier. The Fourth Circuit has held, however, that engaging custodial and maintenance services falls within the discretionary function exception to the FTCA. *Becker v. Dep't of the Army,* 981 F.Supp. 905, 907–08 (D.Md. 1997) (citing *Williams,* 50 F.3d at 309). The *Williams* court found that the discretionary exception applied, in part, because there was no prescribed course of conduct for hiring janitorial and maintenance services. *Id.* (citing *Williams,* 50 F.3d at 309) (finding government was not liable under both independent contractor and discretionary function exceptions when woman was injured after slipping on water and falling in the lobby of a building leased by the government but maintained by a contractor). The *Williams* court also concluded that the discretionary function exception applied because the "decision to hire such contractors requires the Government to engage in a policy decision to weigh the expense involved against the needs of the government premises." *Id.* (citing *Williams,* 50 F.3d at 310).

■ Case law has clearly established that "[t]he decision to hire an independent contractor to render services for the United States is precisely the type of decision that the exception is designed to shield from liability because it involves exercising judgment based on considerations of policy . . . ." *McKeel,* 178 F.Supp.2d at 503; *Williams,* 50 F.3d at 310 (citing *Myers &*

*Myers, Inc. v. United States Postal Serv.,* 527 F.2d 1252, 1256 (2d Cir.1975)); *Scanwell Labs., Inc. v. Thomas,* 521 F.2d 941, 948 (D.C.Cir.1975), *cert. denied,* 425 U.S. 910, 96 S.Ct. 1507, 47 L.Ed.2d 761 (1976); *Gowdy v. United States,* 412 F.2d 525, 529 (6th Cir.), *cert. denied,* 396 U.S. 960, 90 S.Ct. 437, 24 L.Ed.2d 425 (1969); *Thompson v. Dilger,* 696 F.Supp. 1071, 1077 n. 9 (E.D.Va.1988). Before deciding to engage a contractor the government has to weigh considerations such as expenses, payment, access to the premises, administration, and a "veritable plethora of factors." *Williams,* 50 F.3d at 310; *McKeel,* 178 F.Supp.2d at 503. Similarly, in the instant case, I find that the government's decision to hire ASC to "provide integrated logistics support including . . . operation, maintenance, and access of government facilities, . . . buildings, spaces, and grounds; [and] custodial duties" even without regard to structural pier maintenance *still* falls within the discretionary function exception because the decision requires considering, *inter alia,* expenses and the needs of government premises. *Williams,* 50 F.3d at 310. Moreover, neither ASC nor Ryan identifies a federal statute, regulation, or policy that actually *prescribes* a specific course of action for the federal defendants to follow relating to custodial duties and maintenance at the Naval Station. *Williams,* 50 F.3d at 309 (quoting *Berkovitz,* 486 U.S. at 536, 108 S.Ct. 1954).

## VII.

For the reasons set forth herein, I shall grant the government's motions to dismiss the claims asserted against it for lack of subject matter jurisdiction. An order follows.