**Dallas MUSICK, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 87-0073-B.**

United States District Court, W.D. Virginia, Big Stone Gap Division.

June 26, 1991.

Lynn Lauderback, Kingsport, Tenn., Patrick Cline, Norton, Va., for plaintiff.

E. Montgomery Tucker, U.S. Atty., Roanoke, Va., for defendant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, Senior District Judge.

Plaintiff Dallas Musick ("Musick") initiated this personal injury action by alleging jurisdiction in this court under 28 U.S.C.A. § 1346(b) (West 1976), the statute that gives federal courts subject matter jurisdiction over suits based on the Federal Tort Claims Act, 28 U.S.C.A. §§ 2671–2680 (West 1965 and Supp.1991) ("the FTCA"). The United States of America ("the government") now asserts that the court is without subject matter jurisdiction over this action based on the "discretionary function exception" ("DFE") to the FTCA found in 28 U.S.C.A. § 2680(a) (West 1965).

## FINDINGS OF FACT

On December 10–11, 1990, the court held a bench trial on the issue of liability only. Based on the documentary, eyewitness, and expert evidence presented at that trial, the court makes the following findings of fact: On June 7, 1984, Musick was cutting timber in a wooded, mountainous area of Scott County, Virginia. The trees in this area were approximately fifty to sixty feet tall.

As he stood under a hickory tree, a United States Air Force RF–4 reconnaissance plane flew over him at such a low altitude that the turbulence from its wake caused a large limb from the tree to fall on and severely injure him. The trees over which the plane flew swayed from its passage, and the plane was banking at an approximate ninety degree angle when it passed over Musick.

The jet that caused the limb to fall on Musick was part of a reconnaissance squadron stationed at Shaw Air Force Base in South Carolina. On the date of Musick's accident, the jet was engaged in a training mission. The military training route ("MTR") encompassing the area of Scott County where Musick was injured is known as IR–743. On the date of the accident, a Department of Defense Flight Information Publication ("FLIP") was in effect for IR–743. At the location on IR–743 where Musick was injured, the FLIP limited pilots to an altitude no lower than 100 feet above ground level ("100' AGL"). Though the FLIP allowed pilots to go as low as 100' AGL, a squadron policy in effect at the time of the accident limited pilots to an altitude no lower than 300' AGL.

A wind velocity of 100–110 m.p.h. was necessary to cause the limb in question to separate from the tree.[1] The only time an RF–4 aircraft could generate a wake with a wind velocity of 100–110 m.p.h. or more at the place where Musick was injured would be when the aircraft was in a bank and flying at an altitude below that established in the squadron policy. All of the pilots and air crew who actually flew the mission on June 7, 1984 admitted that the aircraft do on occasion drop below the minimum altitudes prescribed by regulation or policy. None of them rebutted the testimony of the eyewitnesses on the ground that the plane in question flew at treetop level and was in a ninety degree bank. It is clear, therefore, that the plane that caused Musick's

---

1. During the trial, Musick placed the limb into evidence. Even though years had passed since the accident, it was clear from the testimony of Musick and other witnesses, as well as from the court's own inspection, that the limb was not dead at the time of the accident, but instead was a large, strong, living hickory limb. Only a very strong force could have broken the limb from the tree.

accident was in violation of the squadron policy.

## CONCLUSIONS OF LAW

### I. THE DISCRETIONARY FUNCTION EXCEPTION

■ To support its argument that the court lacks subject matter jurisdiction over this case, the government relies on the following passage from a case the United States Court of Appeals for the Fourth Circuit recently decided:

> The negligence alleged in this case necessarily calls into question the government's most important procedures and plans for the defense of the country. Because providing for the national security is both a duty and a power explicitly reserved by the Constitution to the executive and legislative branches of government, the judiciary must proceed in this case with circumspection. If we were to hold that the United States acted negligently in conducting the defense of its eastern border, we would be interjecting tort law into the realm of national security and second-guessing judgments with respect to potentially hostile aircraft that are properly left to the other constituent branches of government.

*Tiffany v. United States,* 931 F.2d 271, 275 (4th Cir.1991).

It should be clear from this passage alone, without reference to any other portion of *Tiffany,* that the facts in that case are so distinct from these facts that *Tiffany's* application here is problematic. However, at the risk of being redundant, the court will point out that *Tiffany* involved a real world/real time military mission: the interception, identification, and, if necessary, interdiction of an unidentified and possibly hostile aircraft approaching the continental border of the United States. *Id.* at 272–275. This mission of high consequence stands in sharp contrast to the training mission at issue here. Later in its opinion, the Fourth Circuit explicitly confirmed, albeit in dicta, that *Tiffany's* sweep is far less than the government would have it to be:

We do not hold, of course, that any time a branch of the military asserts a national defense interest to justify its acts, the court must avert its eyes. The military does not enjoy a blanket exemption from the need to proceed in a non-negligent manner. *When conducting training exercises, for example,* or acting in a civilian arena, national defense interests may be more remote and the military faces different restrictions. *See, e.g., Peterson v. United States,* 673 F.2d 237 (8th Cir. 1982) (B–52 plane on training mission liable for flying too low in altitude); *Ward v. United States,* 471 F.2d 667 (3d Cir.1973) (Air Force might be liable for negligently causing sonic booms).

*Id.* at 280 (emphasis added). Based on this language, the court holds that this case is so factually distinct that *Tiffany* has no application here.

With *Tiffany* out of the picture, the court will consult other cases that have addressed the reach of the DFE in order to determine if it applies here. In *Berkovitz v. United States,* 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988), the Supreme Court addressed a case concerning the Food and Drug Administration's licensing and approval for release of an oral polio vaccine. The Court established two situations where conduct by governmental agents would not gain the protection of the DFE. In part quoting from its previous decision in *United States v. Varig Airlines,* 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984), the Court first stated that

> "it is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exemption applies in a given case." ... In examining the nature of the challenged conduct, a court must first consider whether the action is a matter of choice for the acting employee. This inquiry is mandated by the language of the exception; conduct cannot be discretionary unless it involves an element of judgment or choice.... Thus, the [DFE] will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. In

this event, the employee has no rightful option but to adhere to the directive. And if the employee's conduct cannot appropriately be the product of judgment or choice, then there is no discretion in the conduct for the [DFE] to protect.

*Berkovitz,* 486 U.S. at 536, 108 S.Ct. at 1958 (citations omitted). Second, the court noted that, even if conduct involves judgment or discretion, "a court must determine whether that judgment is of the kind that the [DFE] was designed to shield." *Id.* Where conduct involves judgment or discretion, the DFE "protects only governmental actions and decisions based on considerations of public policy." *Id.* at 537, 108 S.Ct. at 1959.

Three years after its decision in *Berkovitz,* the Supreme Court handed down *United States v. Gaubert,* —— U.S. ——, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). *Gaubert* addressed whether federal savings and loan regulators who assumed day-to-day operation of a failing thrift were entitled to the protection of the DFE. *Gaubert* reaffirmed the Court's decision in *Berkovitz. See id.* at ——, 111 S.Ct. at 1269. Significantly, as to the second instance described in *Berkovitz* where government agents do not gain the protection of the DFE, it also fleshed out the Court's somewhat cryptic comment concerning "governmental actions and decisions based on considerations of public policy":

> For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime. The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on *the nature of the actions taken and on whether they are susceptible to policy analysis.*

*Gaubert,* —— U.S. at ——, 111 S.Ct. at 1274–1275. At the end of the second sentence quoted above, the Court appended this footnote:

> There are obviously discretionary acts performed by a Government agent that are within the scope of his employment but not within the [DFE] because these acts cannot be said to be based on the purposes that the regulatory regime seeks to accomplish. If one of the officials involved in this case drove an automobile on a mission connected with his official duties and negligently collided with another car, the exception would not apply. Although driving requires the constant exercise of discretion, the official's decisions in exercising that discretion can hardly be said to be grounded in regulatory policy.

*Id.* at ——, n. 7, 111 S.Ct. at 1275, n. 7. Finally, on the issue of what exactly a federal regulation or policy *is, Gaubert* made clear that they are not limited to what one encounters in the Code of Federal Regulations:

> Not all agencies issue comprehensive regulations, however. Some establish *policy* on a *case-by-case basis,* whether through adjudicatory proceedings or through administration of agency programs. Others promulgate regulations on some topics, but not on others. *In addition, an agency may rely on internal guidelines rather than on published regulations.*

*Id.* at ——, 111 S.Ct. at 1274 (emphasis added).

With this state of the law in mind, it is clear to the court that the governmental conduct at issue here is not entitled to the protection of the DFE. This holding draws its rationale from a synthesis of the situations *Berkovitz* describes.

First, it is clear that the pilot of the plane that caused Musick's accident was predominantly in a situation that allowed the exercise of judgment or discretion. Even so, the pilot's activities did not gain the protection of the DFE. This is evident by analogizing to the automobile driver described in the Supreme Court's footnote in *Gaubert:* "Although [flying a jet airplane] requires the constant exercise of discretion, the [pilot's] decisions in exercising that discretion can hardly be said to be grounded in [de-

fense] policy." *Gaubert,* —— U.S. at ——, n. 7, 111 S.Ct. at 1275, n. 7.

Second, the synthesis comes into play by recognizing that the squadron policy of a minimum altitude of 300′ AGL established an "envelope" in which the pilot continually exercised judgment and discretion as pointed out above. However, when the pilot reached the margins of the envelope, he lost this discretionary role, for it is clear from *Gaubert* that the squadron policy is "a federal ... regulation ... or policy [that] specifically prescribes a course of action for an employee to follow. In this event, the employee has no rightful option but to adhere to the directive." *Berkovitz,* 486 U.S. at 536, 108 S.Ct. at 1958. The mandatory language of the squadron policy regarding altitude supplanted the pilot's right to use his judgment and discretion when deciding how close to the ground he would fly. Accordingly, the governmental conduct at issue here is not protected by the DFE, and the court has jurisdiction over this case.

## II. NEGLIGENCE

■ In its findings of fact, the court noted that the government's plane caused the branch to separate from the hickory tree, and that the branch caused severe injury to Musick when it fell on him. Thus, Musick has proved that the plane's flight was the proximate cause of his injuries. *See Butler v. Washington Refrig. Serv. Co.,* 213 Va. 461, 462, 193 S.E.2d 781, 782 (1973); *Wilkins v. Sibley,* 205 Va. 171, 174, 135 S.E.2d 765, 767 (1964). One of the questions that remains is whether the government owed a duty to Musick in the first place.

In waiving the sovereign immunity of the United States, the FTCA provides that "[t]he United States shall be liable ... in the same manner and to the same extent as a private individual under like circumstances...." 28 U.S.C.A. § 2674 (West 1965). The implicit message in this language is that the law of Virginia governs the United States's alleged negligence. Accordingly, the court will apply Virginia's law here. *Rayonier, Inc. v. United States,* 352 U.S. 315, 319, 77 S.Ct. 374, 376, 1 L.Ed.2d 354 (1957).

Virginia's law provides that

[w]henever one person is, by circumstances, placed in such a position with regard to another that every one of ordinary sense who did think would at once recognize that, if he did not use ordinary care and skill in his own conduct with regard to those circumstances, he would cause danger of injury to the person or the property of the other, a duty arises to use ordinary care and skill to avoid such injury.

*Southern States Grain Marketing Cooperative, Inc. v. Garber,* 205 Va. 757, 139 S.E.2d 793, 796 (1965) (quoting *Standard Oil Co. v. Wakefield,* 102 Va. 824, 832, 47 S.E. 830, 832 (1904)). In addition, a Virginia statute provides that "[a]ny person who shall operate any aircraft within the airspace over, above or upon the lands or waters of this Commonwealth ... without due caution and circumspection and in a manner so as to endanger any person or property, shall be guilty of a misdemeanor." Va.Code Ann. § 5.1–13 (1988). Thus, the government had a common law and a statutory duty to Musick to use ordinary care and skill to avoid injuring him or his property.

■ It is clear that the government breached the duty it owed to Musick when its plane caused the limb to separate and fall on him. The circumstances were such that the pilot possessed a high performance jet airplane. Unless the pilot used due care, it was foreseeable that the plane could cause conditions on the ground that would cause injury to persons on the ground. *Thalhimer Bros. v. Buckner,* 194 Va. 1011, 1014, 76 S.E.2d 215, 217 (1953). This, in fact, is what happened. Thus, the government violated its common law duty to Musick. Further, the pilot's violation of the statute constituted negligence *per se* in Virginia, for the statute by its broad terms (i.e., "any person or property") makes Musick "a member of a class for whose benefit the legislation was enacted." *Butler v.*

**188**

*Frieden,* 208 Va. 352, 353, 158 S.E.2d 121, 122 (1967).[2]

■ The only remaining question is whether Musick was contributorily negligent since he was not wearing a hard hat at the time of the accident. The government has suggested as much in its trial memorandum. The court believes that the government's contention must fail, however, for nothing Musick did or failed to do *caused or contributed* to the *act* that led to his injury:

> Not every act of negligence which a plaintiff is committing at the time an event occurs that results in injury to him will bar his recovery against the person whose negligence was a proximate cause of the *event*. To bar his recovery his negligence must have been a failure to use due care with respect to the *event* which resulted in his injury, and must have borne such a relationship to that *event* that, if he himself had not been negligent, he would have received no injury from the negligence of the defendant. It is not sufficient to bar his recovery that, if he had not been negligent, the event might not have resulted in his being injured, or might, or even would not have resulted in injuring him as seriously as it did.

*Morris v. Dame's Ex'r,* 161 Va. 545, 564, 171 S.E. 662, 668 (1933) (emphasis added). While Musick's injuries might have been less severe had he been wearing a hard hat at the time the limb fell on him, his wearing of a hard hat would have done nothing to stop the "event" (i.e., the plane's low altitude flight) that caused the branch to fall. Therefore, based on the reasoning in *Morris,* Musick was not contributorily negligent. Under the FTCA, the government is liable for Musick's injuries.

### CONCLUSION

Based on the findings of fact and conclusions of law set out above, the court finds that the government's actions were not protected by the discretionary function exception to the FTCA, and that the government, under the FTCA, is liable for its negligence in injuring Musick. The court will schedule immediately a trial on the issue of damages only.

---

**2.** In *Peterson v. United States,* cited in *Tiffany, supra,* the United States Court of Appeals for the Eighth Circuit relied on a North Dakota statute in holding the United States liable for damages a B–52 bomber caused when it flew over a farm at a low altitude. *Peterson,* 673 F.2d at 240–41.