ATTORNEYS FOR APPELLANTS
Susan E. Cline
Meggan Brumbaugh
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Robert L. Thompson
F. John Rogers
Fort Wayne, Indiana
Richard L. Schultheis
Indianapolis, Indiana

ATTORNEYS FOR AMICUS
CURIAE THE INDIANA TRIAL
LAWYER'S ASSOCIATION
Steven L. Langer
Tara M. Worthley
Valparaiso, Indiana

ATTORNEY FOR AMICUS CURIAE
THE INDIANA STATE MEDICAL
ASSOCIATION
Libby Y. Goodknight
Indianapolis, Indiana



# In the
# Indiana Supreme Court

No. 49S04-1111-CT-671

STEPHEN W. ROBERTSON, INDIANA
COMMISSIONER OF INSURANCE, AS
ADMINISTRATOR OF THE INDIANA PATIENT'S
COMPENSATION FUND AND THE INDIANA
PATIENT'S COMPENSATION FUND,

*Appellants (Defendants below),*

v.

B.O., A MINOR, BY HIS PARENTS AND NEXT
FRIENDS, LISA A. ORT AND KEVIN C. ORT,

*Appellee (Plaintiff below).*

Appeal from the Marion Superior Court, No. 49D14-0706-CT-23482
The Honorable S.K. Reid, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 49A04-1009-CT-528

**October 31, 2012**

**Massa, Justice.**

In defending against a petition to recover excess damages arising from a medical malpractice action, may the Indiana Patient's Compensation Fund—after the healthcare provider settles with the plaintiff and admits liability—present evidence to dispute the existence or cause of the plaintiff's injury? In some types of cases, we have previously said yes. In the type of case before us today, however, we say no.

## Facts and Procedural History

At age four, B.O. was diagnosed with a mild form of cerebral palsy known as spastic diplegia. Subsequently, his parents filed a complaint under the Indiana Medical Malpractice Act, claiming that the healthcare providers who attended B.O.'s birth were negligent. Specifically, they asserted that the healthcare providers failed to adequately monitor his condition during labor and delivery and then failed to respond when signs of fetal distress appeared. That fetal distress, they maintained, lasted for nearly two hours before his delivery and resulted in the development of his condition.

Shortly before trial, B.O.'s healthcare providers settled for a sum allowing B.O. to seek excess damages from the Indiana Patient's Compensation Fund (PCF). See Ind. Code § 34-18-15-3 (2008). B.O.'s parents then filed a petition for excess damages, after which the PCF disclosed five expert witnesses prepared to testify that B.O. either did not have cerebral palsy consisting of spastic diplegia or that if he did, it did not result from the conduct of the healthcare providers at his birth. The parents then sought partial summary judgment seeking to limit the issue at trial to

the amount of the compensable damages for the injury alleged by [B.O.] which is mild cerebral palsy consisting of spastic diplegia; and . . . the [PCF] may not contend or offer testimony to establish that [B.O.] does not have mild cerebral palsy consisting of spastic diplegia and/or [B.O.'s] condition was not caused by the conduct of [the healthcare providers].

Appellant's App at 233–34. The trial court granted partial summary judgment for B.O., and the Court of Appeals reversed. Robertson v. B.O. ex rel. Ort, 949 N.E.2d 404, 407, 411 (Ind. Ct. App. 2011). We granted transfer and now affirm the trial court.

## Standard of Review

In reviewing a grant of summary judgment, the appellate court "faces the same issues that were before the trial court, and analyzes them in the same way." Carie v. PSI Energy, Inc., 715 N.E.2d 853, 855 (Ind. 1999). Where the challenge to the trial court's summary judgment presents only legal issues, not factual ones, the issues are reviewed *de novo*. Spangler v. Bechtel, 958 N.E.2d 458, 461 (Ind. 2011).

## The PCF is Precluded from Disputing the Existence or Cause of B.O.'s Claimed Injury

The Indiana Medical Malpractice Act (MMA) creates a bifurcated procedure for determining medical malpractice claims against a qualified healthcare provider. This process is correlated to the separate damages caps imposed by the MMA.

The [MMA] caps a recovery for a patient's injury or death at $1,250,000. Ind. Code § 34-18-14-3(a)(3) (2008). The Act limits the liability of a qualified health care provider whose medical negligence proximately caused the injury or death to the first $250,000 of damages. Ind. Code § 34-18-14-3(b). If a judgment or settlement fixes damages in excess of a qualified health care provider's liability, then a plaintiff may recover excess damages from the PCF. Ind. Code § 34-18-14-3(c).

3

Ind. Dep't of Ins. v. Everhart, 960 N.E.2d 129, 133 (Ind. 2012). An injured plaintiff thus proceeds first against the healthcare provider, Ind. Code §§ 34-18-8-1 to -8 (2008), and then against the PCF, Ind. Code § 34-18-15-3 (2008). Central to the resolution of this case is the meaning of Indiana Code § 34-18-15-3(5) which states in part:

> If the commissioner, the health care provider, the insurer of the health care provider, and the claimant cannot agree on the amount, if any, to be paid out of the patient's compensation fund, the court shall, after hearing any relevant evidence on the issue of claimant's damage submitted by any of the parties described in this section, determine the amount of claimant's damages, if any, in excess of the two hundred fifty thousand dollars ($250,000) already paid by the insurer of the health care provider. The court shall determine the amount for which the fund is liable and make a finding and judgment accordingly. *In approving a settlement or determining the amount, if any, to be paid from the patient's compensation fund, the court shall consider the liability of the health care provider as admitted and established*.

Ind. Code § 34-18-15-3(5) (emphasis added).[1] The contentions of the parties hinge on the precise meaning of "liability" and in what manner it is "admitted and established" in the second stage of the bifurcated MMA proceedings.

The PCF believes that the evidence it seeks to introduce is "not only relevant, but necessary" to a determination of damages. Appellant's Br. at 9. As we understand the argument, the final sentence of Indiana Code Section 34-18-15-3(5), which requires the trial court to "consider the liability of the health care provider as *admitted and established*," Ind. Code § 34-18-15-3(5) (emphasis added), is inapplicable for two reasons: (1) recent Indiana case law has interpreted this provision "to allow causation type evidence" because "[e]vidence of the

---

[1] B.O.'s action falls under a previous version of the statute in which the statutory cap on damages was lower. See Ind. Code § 34-18-15-3 (1996). The remainder of this section, however, remains unchanged, see P.L. 233-1999 § 15, 1999 Ind. Acts 1584, 1609, and the increased damages cap does not alter the analysis in this case.

existence of an injury can be relevant to both causation and damages," Appellant's Br. at 18, and (2) Section 34-18-15-3(5) does not preclude the PCF "from challenging the compensable nature of B.O.'s injury." Appellant's Br. at 12. Under the facts of this case, we disagree on both counts.

### A.     Foreclosure of Existence and Causation of Injury

#### 1.     "Liability" under Ind. Code §34-18-15-3(5)

The PCF argues that it may introduce evidence of "medical issues of causation relevant to determining damages." Appellant's Br. at 15. Specifically, the PCF seeks to introduce evidence at trial to dispute the nature of B.O.'s injury, contending that B.O. either has *no injury* or that his injury was *not caused* by the healthcare providers' breach of duty. This argument raises a question we briefly addressed in Atterholt v. Herbst, 902 N.E.2d 220 (Ind. 2009): what is meant when "liability" is "admitted and established" under Indiana Code § 34-18-15-3(5)? In Herbst we said:

> The Medical Malpractice Act does not define "liability." However, the Act provides that undefined legal terms have the meaning consistent with the common law. [Ind. Code] § 34–18–2–2. According to Black's Law Dictionary (8th ed. 2004), liability is the "quality or state of being legally obligated or accountable."

Herbst, 902 N.E.2d at 223. We thus begin with a look to the common law definition of liability in a negligence case.

Traditionally, negligence consists of "(1) a duty owed by the tortfeasor to the tort victim, (2) a breach of that duty, and (3) an injury to the tort victim proximately caused by the breach." Spangler, 958 N.E.2d at 468 (citing Estate of Mintz v. Conn. Gen. Life Ins. Co., 905 N.E.2d 994, 998–99 (Ind. 2009)). A plaintiff proving each of these elements establishes that a defendant is "legally obligated or accountable," Herbst, 902 N.E.2d at 223 (quoting Black's Law Dictionary (8th ed. 2004)). That is to say, the defendant is *liable*. All that remains is a determination of the amount of damages to which the plaintiff is entitled. See id.

5

This definition, then, gives us two criteria relevant to the PCF's appeal. First, "[i]t is axiomatic that, before liability can be imposed, there must be proof that the defendant's negligence proximately caused the plaintiff's harm." Dunn v. Cadiente, 516 N.E.2d 52, 55 (Ind. 1987); see also Dillon v. Glover, 597 N.E.2d 971, 973 (Ind. Ct. App. 1992) (quoting Dunn and reasoning: "[i]t therefore follows that once *liability* is established, the issue of proximate cause is decided."). Likewise, in order to establish liability, a plaintiff must demonstrate an injury; without a connection between the breach of duty and the injury, causation fails. Dunn, 516 N.E.2d at 55. From this it seems clear that, for purposes of determining excess damages, if "the court shall consider the *liability* of the health care provider as admitted and established" pursuant to Section 34-18-15-3(5), then the supporting requirements that the healthcare providers' breach of duty *caused* an *injury* to B.O. must—by necessity—also be viewed as "admitted and established."

Here, B.O. has claimed a single injury: cerebral palsy consisting of spastic diplegia. That is the claim that the healthcare providers chose to settle, and thus that is the claim for which liability is "admitted and established"—including, by implication, the required elements of causation and injury. All that remains to be determined is the amount of damages to which B.O. is entitled from the PCF for the malpractice.

We recognize that this means that the existence and type of injury that B.O. sustained is determined without the full explication that may have been adduced at a trial. But this was the method chosen by the General Assembly when enacting the MMA. In an effort to control the costs associated with medical malpractice claims, the General Assembly placed numerous constraints on plaintiffs such as a statute of limitations, Ind. Code §§ 34-18-7-1 to -3 (2008), the use of medical review panels, Ind. Code §§ 34-18-10-1 to -26 (2008), caps on recoverable damages, Ind. Code §§ 34-18-14-1 to -5 (2008), and retention of the contributory negligence defense, Ind. Code § 34-51-2-1 (2008). Perhaps in an effort to balance this sweeping reform, the legislature chose to provide plaintiffs with the benefit of final and established liability when the healthcare provider chooses to settle. It is not our place to upset that balance.

## 2. Application of <u>Atterholt v. Herbst</u>[2]

The PCF also contends that "<u>Herbst</u> establishes that there are instances where the PCF is entitled to introduce relevant evidence to assist the trier of fact in determining the appropriate amount of damages, even if that evidence is also relevant to liability issues foreclosed by the judgment or settlement of the underlying cause." (Appellant's Br. at 14.)  However, as the PCF admits, "<u>Herbst</u> was considered in the context of an *increased risk of harm* analysis." Appellant's Br. at 13–14 (emphasis added).  We find this distinction to be dispositive.

As we said in <u>Everhart</u>, <u>Herbst</u> was a "necessary consequence" of <u>Cahoon v. Cummings</u>, 734 N.E.2d 535 (Ind. 2000), wherein we held that a successful claim for increased risk of harm brought pursuant to <u>Mayhue v. Sparkman</u>, 653 N.E.2d 1384 (Ind. 1995) entitled a plaintiff only to damages proportional to the increased risk.  <u>Everhart</u>, 960 N.E.2d at 133.  But as we explain in greater detail below, because this is not an increased risk of harm claim, <u>Herbst</u> is inapplicable.

<u>Mayhue</u>, <u>Cahoon</u>, and <u>Herbst</u> were each wrongful death cases in which the deceased had less than a fifty percent chance of survival even prior to the claimed malpractice.  For these types of cases—and *only* these types of cases—in <u>Mayhue</u> we adopted the Restatement (Second) of Torts § 323 (1965) increased risk of harm approach.  <u>Mayhue</u>, 653 N.E.2d at 1388-89.  The goal of this approach was to address the inherent challenge of those cases:

---

[2] The PCF also relies upon two Court of Appeals cases:  <u>Ind. Patient's Comp. Fund v. Butcher</u>, 863 N.E.2d 11 (Ind. Ct. App. 2007) and <u>Atterholt v. Robinson</u>, 872 N.E.2d 633 (Ind. Ct. App. 2007). <u>Robinson</u> is readily distinguishable because, as we explain below in Part 2, the issue before the Court of Appeals was application of the proper cause of action.  <u>Robinson</u>, 872 N.E.2d at 639–41.  That question is not now before us.  In <u>Butcher</u>, after settlement with the healthcare provider and a judgment against the PCF, the Court of Appeals evaluated the evidence supporting the claimed injury.  <u>Butcher</u>, 863 N.E.2d at 13–16.  Under a prima facie error standard, because the plaintiff failed to respond to the PCF's argument, the court concluded that there was no evidence to support the recovery.  <u>Id.</u> at 16, 20.  To the extent that <u>Butcher</u> is inconsistent with our holding today, we disapprove.

> Where a patient's illness or injury already results in a probability of dying greater than 50 percent, an obvious problem appears. No matter how negligent the doctor's performance, it can never be the proximate cause of the patient's death. Since the evidence establishes that it is more likely than not that the medical problem will kill the patient, the disease or injury would always be the cause-in-fact. The plaintiff must ordinarily prove that proper diagnosis and treatment would have prevented the patient's injury or death. In cases such as this one, it appears that a defendant would always be entitled to summary judgment.

Id. at 1387. Moreover, MMA claims are ordinarily evaluated under traditional contributory negligence. See Ind. Code § 34-51-2-1 (exempting MMA claims from the Indiana Comparative Fault Act). This means that the plaintiff's contributory negligence may act as a complete bar to recovery, and also that a defendant found liable is responsible for the full amount of damages resulting from the malpractice regardless of any aggravating preexisting condition. Dunn, 516 N.E.2d at 56 ("A pre-existing condition or susceptibility, if aggravated by a defendant's conduct, may result in a defendant's full liability for the resulting injury and loss. However, if the pre-existing condition, standing alone, independently causes injury and loss, a defendant will not be liable for such damages.").

Mayhue thus established an alternative means of proving causation where traditional means are inadequate and "reflects a special concern for plaintiffs who stood a fifty percent or worse chance of recovering before suffering some form of medical negligence." Everhart, 960 N.E.2d at 134. What is more, because a Mayhue claim permits recovery otherwise barred by traditional principles of proximate causation, Mayhue, 653 N.E.2d at 1387, the analysis of fault is significantly altered. The plaintiff need only prove that the healthcare provider was a "substantial factor in causing the harm." Id. at 1388.

Then, in Cahoon, we held that "upon a showing of *causation under Mayhue*, damages are proportional to the increased risk attributable to the defendant's negligent act or omission." Cahoon, 734 N.E.2d at 541 (emphasis added). We also determined that principles of comparative fault were the best vehicle for determining damages in a Mayhue claim. See id. ("Holding the defendant liable for the full value of the wrongful death claim is inconsistent with

8

the statutory requirement that the loss be caused by the defendant who only increased the risk of an already likely result.").

But both <u>Mayhue</u> and <u>Cahoon</u> were actions against the healthcare providers; it was not until <u>Herbst</u> that we were presented with the question of determining the amount of damages due from the PCF after settlement with the healthcare provider in a cause of action under <u>Mayhue</u>. <u>Herbst</u>, 902 N.E.2d at 221–22. In response, we held that "evidence of Herbst's underlying risk of death whether or not he was properly treated is relevant to both liability—whether malpractice caused his death—and to damages—the amount for which the [PCF] is responsible." <u>Id.</u> at 223. It is this holding of <u>Herbst</u> which the PCF argues should be applied in the present case to allow its proposed evidence. We disagree.

<u>Herbst</u> was necessarily limited to <u>Mayhue</u> increased risk of harm claims because "<u>Cahoon</u> established only the measure of damages in cases involving a <u>Mayhue</u> claim." <u>Everhart</u>, 960 N.E.2d at 134; <u>see also id.</u> at 133 ("Our holding in <u>Herbst</u> was a necessary consequence of <u>Cahoon</u>, in which we held that a successful <u>Mayhue</u> claim for causing an increased risk of harm entitled a plaintiff to damages in proportion to that increased risk."). It is thus only in <u>Mayhue</u> increased risk of harm claims that evidence of underlying risk would be "relevant to both liability . . . and to damages." <u>Herbst</u>, 902 N.E.2d at 223.

Unless a claim is brought under <u>Mayhue</u>, <u>Herbst</u> is inapplicable. B.O.'s complaint does not allege an increased risk of harm, but rather traditional negligence resulting in personal injury, and therefore <u>Herbst</u> does not apply.

**B.      Legal Compensability Versus Factual Compensability**

The PCF contends that it may dispute "the compensable nature of B.O.'s alleged injury." Appellant's Br. at 13. The PCF is correct that it may present evidence regarding the compensability of a claim when that issue is in dispute, but contrary to the PCF's contentions, compensability is not disputed in this case. Throughout its briefing the PCF conflates the *factual*

question of compensability—whether B.O. suffered an injury—with the *legal* question of compensability—whether B.O.'s injury is one for which the law recognizes a cause of action. In fact, a careful reading of one of the Court of Appeals cases upon which the PCF relies makes this abundantly clear.

In Robinson, the plaintiff pled multiple theories of recovery, claiming that the healthcare provider was liable under either the Indiana Adult Wrongful Death Statute (AWDS) or the Indiana Survival Act. Robinson, 872 N.E.2d at 636. Robinson and the healthcare provider settled, but the settlement agreement "did not specify whether the damages were awarded pursuant to the AWDS or the Survival Act." Id. at 637. When Robinson sought excess damages from the PCF, it became necessary to determine under which theory of recovery the healthcare provider was liable because the measure of damages differs significantly between the AWDS and the Survival Act, and "a tortfeasor may be held liable under *either* the [AWDS] or the [Survival Act], *but not both*." Id. at 639–41 (quoting Best Homes, Inc. v. Rainwater, 714 N.E.2d 702, 705 (Ind. Ct. App. 1999)) (emphasis in original).

Because the potential recovery under the Survival Act was greater than under the AWDS, the PCF sought to introduce evidence to prove that the healthcare provider's negligence caused the patient's death. Id. at 641–42. In response, Robinson contended that the settlement with the healthcare provider foreclosed the issue of causation by operation of the MMA. Id. at 642-43 (citing Ind. Code § 34-18-15-3(5)).

The Court of Appeals noted that "[b]ecause the MMA establishes the [PCF's] liability if the healthcare provider settles with the plaintiff, . . . it necessarily follows that proximate cause is also established." Id. at 642. However, "because recovery under the AWDS or the Survival Act hinges on whether the victim dies as a direct result of the tortfeasor's actions," the court held that where "*the plaintiff asserts alternative claims* against a healthcare provider and the resulting settlement does not specify which claim the damages cover, . . . the [PCF] is allowed to contest the *proper theory of recovery*." Id. at 643 (emphasis added).

The PCF's reliance on <u>Robinson</u> is misplaced. In <u>Robinson</u> there was no dispute that the underlying liability was established, <u>id.</u> at 643 (". . . the [PCF] admits that it is liable . . ."), whereas here the underlying liability is precisely what the PCF seeks to dispute. Further, the only question in <u>Robinson</u> was which theory of recovery to apply in calculating the damages—a question of *law*. In contrast, here B.O. asserts only a single theory of recovery: negligence resulting in personal injury. The PCF does not contend that a different legal standard should apply, but instead wishes to dispute the existence of the underlying liability—a question of *fact*. However, as we explained above, the fact of causation is foreclosed by Indiana Code Section 34-18-15-3(5). Thus, while the PCF is correct that it is "not required to pay non-compensable damages," Appellant's Br. at 18, its characterization of its own argument as one of compensability is incorrect.

### Conclusion

Because Indiana Code § 34-18-15-3(5) precludes the PCF from disputing the existence or cause of B.O.'s claimed injury, the trial court's grant of partial summary judgment is affirmed.

**Dickson, C.J., Rucker, and David, J.J., concur.**

11