**John J. DILLON, Commissioner of Insurance of Indiana, and Patient's Compensation Fund of Indiana, et al., Appellants–Respondents,**

v.

**Hildreth GLOVER, Individually and as Personal Representative of the Estate of Milton Glover, Deceased, Appellee–Petitioner.**

No. 49A02–9108–CV–347.

Court of Appeals of Indiana, Second District.

Aug. 18, 1992.

Catherine A. Kling, Lawrence M. Reuben, Indianapolis, for appellants-respondents.

Ronald Dyer, Indianapolis, for amicus curiae Indiana State Medical Ass'n.

Terrence P. Pehler, Indianapolis, James Ayers, Crawfordsville, for appellee-petitioner.

Thomas C. Doehrman, Conour–Doehrman, Indianapolis, for amicus curiae Indiana Trial Lawyers Ass'n.

## CASE SUMMARY

BUCHANAN, Judge.

Respondent-appellant John Dillon, the Commissioner of Insurance of Indiana and

the Administrator of the Patient's Compensation Fund of Indiana (hereinafter referred to as the Fund) appeals from the trial court's award of damages to Hildreth Glover (Hildreth), individually and as personal representative of the Estate of Milton Glover (Milton), on her petition for excess damages from the Fund, claiming that the trial court erred when it determined Milton's death was caused by medical malpractice.

We affirm.

## FACTS

The facts most favorable to the trial court's judgment reveal that Milton, a cigarette smoker, began experiencing pain in the right side of his chest in 1983. By November, 1983, Milton was no longer able to continue his work as a union pipefitter and plumber because of the pain in his chest. After attempting to return to work in January, 1984, Milton sought medical attention.

On January 11, 1984, x-rays of Milton's chest were taken and forwarded to Dr. John Garvish (Dr. Garvish) at Radiology Services, Inc. (RSI) for analysis. Dr. Garvish determined that the x-ray revealed no abnormality and no further tests were performed.

In October, 1984, x-rays of Milton's chest were again taken and a cancerous tumor in his lung was discovered. The tumor had grown 400% since January, and the growth prevented surgical treatment of the tumor. While radiation therapy was somewhat successful, Milton died of lung cancer on June 12, 1986.

Hildreth instituted a medical malpractice action against Dr. Garvish and RSI for wrongful death, claiming their negligence in misreading Milton's x-ray proximately caused his death. Hildreth eventually settled with Dr. Garvish, RSI and their insurer, and the insurer agreed to pay Hildreth $100,000. Hildreth then petitioned for excess damages from the Fund pursuant to Ind.Code 16-9.5-4-3 (1988).

At trial, the Fund argued that Dr. Garvish's negligence did not proximately cause

Milton's death and that Hildreth was therefore not entitled to any excess damages. Evidence at trial established that if Milton's condition had been diagnosed in January, he might have had a 30% chance to live five years, and that he had only an 8% chance to live five years when the cancer was discovered in October. The trial court concluded that Hildreth had established damages for loss of love, care and affection and awarded her $400,000 from the Fund.

## ISSUE

Whether the trial court erred when it awarded damages for Milton's death?

## DECISION

*PARTIES' CONTENTIONS*—The Fund claims that Dr. Garvish's negligence only cost Milton a "chance" at living, and that Milton's death was proximately caused by his cancer, so Hildreth should receive nothing from the Fund. Hildreth responds that because Dr. Garvish and RSI settled their liability, the question of proximate cause was not at issue. The Indiana State Medical Association filed an amicus brief in support of the Fund's position. The Indiana Trial Lawyers Association favors Hildreth's arguments.

*CONCLUSION*—The question of causation was not before the trial court, so damages could be awarded.

Although the Fund importunes us to resolve the question of whether a loss of a chance of life is a compensable injury in Indiana, as that issue has never been decided by an Indiana court, after analysis of the applicable statute, we are inclined to agree with Hildreth that we need not decide that question in this case.

The relevant statute, IC 16-9.5-4-3 (hereinafter referred to as the Statute), provides, in pertinent part:

"If a health care provider or its insurer has agreed to *settle its liability on a claim* by payment of its policy limits of one hundred thousand dollars ($100,000), and claimant is demanding an amount in

excess thereof, then the following procedure must be followed:

. . . . .

(5) ... If the commissioner, the health care provider, the insurer of the health care provider, and the claimant cannot agree on the *amount*, if any, to be paid out of the patient's compensation fund, then the court, *after hearing any relevant evidence on the issue of claimant's damage*, submitted by any of the parties described in this section, shall determine the *amount* of claimant's damages, if any, in excess of the one hundred thousand dollars ($100,000) already paid by the insurer of the health care provider. The court shall determine the *amount* for which the fund is liable and render a finding and judgment accordingly. In approving a settlement or determining the *amount*, if any, to be paid from the patient's compensation fund, the court shall consider *the liability of the health care provider as admitted and established.*" (Emphasis supplied).

This statute is unambiguous, in fact it could be characterized as a paragon of clarity. In determining the amount to be paid from the Fund "the court shall consider the liability of the health care provider as admitted and established" if it has agreed to settle its liability—as happened here.

The Fund would equate settlement with an admission of negligence, and claims that the issue of whether the health care provider's negligence proximately caused any damage is properly considered by the trial court. The Statute, however, speaks of settling a health care provider's *liability* and provides that the trial court will consider the *liability* of the health care provider as admitted and established.

■ Our Supreme Court has observed: "It is axiomatic that, before *liability* can be imposed, there must be proof that the defendant's negligence *proximately*

*caused* the plaintiff's harm." *Dunn v. Cadiente* (1987), Ind., 516 N.E.2d 52, 55 (emphasis supplied). It therefore follows that once *liability* is established, the issue of proximate cause is decided.

The Fund seeks support from our decision in *Eakin v. Kumiega* (1991), Ind.App., 567 N.E.2d 150. In *Kumiega*, we considered a request for excess damages from the Fund due to the negligent infliction of emotional distress by the health care provider. We held that the impact rule precluded the claimant's recovery for damages arising from the negligent infliction of emotional distress.[1] The claimant contended that the Statute required the trial court to consider the health care provider's liability as admitted and that the trial court therefore had to award damages for the negligent infliction of emotional distress. We concluded that the admission of liability did not obligate the Fund to compensate claimants for noncompensable injuries.

In this case Hildreth has filed a wrongful death action against the health care providers, claiming their negligence proximately caused Milton's death. *Record* at 185. The only damages from the Fund sought by Hildreth were for Milton's death. *Record* at 3. Death is a compensable injury, *see* Ind.Code 34–1–1–2 (1988), while injuries sustained by the negligent infliction of emotional distress were not at the time of the *Kumiega* decision. Our decision in *Kumiega* therefore does not support the Fund's argument.

■ Obviously we cannot support the Fund's view that the Statute allows the Fund to litigate a health care provider's liability after the provider's liability on a claim is settled. In our view the Statute contemplates that, upon a petition for excess damages, the trial court will determine the *amount*[2] of damages, if any, due to the claimant, not *whether* the provider is liable for damages. While the Fund may argue that the trial court adopted the wrong standard for compensation of an

---

1. Our opinion in *Kumiega* was decided before the Supreme Court modified the impact rule in *Shuamber v. Henderson* (1991), Ind., 579 N.E.2d 452.

2. As the appellee's brief aptly puts it on p. 3: "Thus, the only question is the quantum of damage, not the fact of liability for the damage."

injury, *see e.g. Miller v. Mayberry* (1989), Ind., 546 N.E.2d 834, no authority exists to support its argument that it can litigate the issue of proximate causation after a provider has settled its liability.

 In a wrongful death action, the survivor may recover for the loss of care, love and affection, and the training and guidance of the deceased. *American Carloading Corp. v. Gary Trust & Savings Bank* (1940), 216 Ind. 649, 25 N.E.2d 777; *Challenger Wrecker Mfg. Inc. v. Estate of Boundy* (1990), Ind.App., 560 N.E.2d 94, *trans. dismissed; Dunkelbarger Const. Co. v. Watts* (1986), Ind.App., 488 N.E.2d 355. The trial court's damage award for the loss of Milton's love, care and affection, *record* at 209, is therefore an appropriate measure of damages for Milton's death.

The trial court properly awarded damages to Hildreth, and we decline the Fund's invitation to discuss the effect of a loss of a chance of life on the issue of proximate causation, as that question is not before us.

Judgment affirmed.

SHIELDS and RUCKER, JJ., concur.