ATTORNEYS FOR APPELLANT
Elizabeth H. Knotts
Rori L. Goldman
Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE
INDIANA STATE MEDICAL ASSOCIATION
Thomas J. Costakis
Libby Y. Mote
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Robert L. Thompson
Fort Wayne, Indiana

Richard L. Schultheis
Indianapolis, Indiana



FILED
Mar 10 2009, 8:39 am

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 49S04-0806-CV-344

JIM ATTERHOLT, COMMISSIONER OF
THE INDIANA DEPARTMENT OF INSURANCE,
AS ADMINISTRATOR OF THE INDIANA
PATIENT'S COMPENSATION FUND,

*Appellant (Defendant below),*

v.

GENEVA HERBST, PERSONAL
REPRESENTATIVE OF THE ESTATE OF
JEFFRY A. HERBST, DECEASED,

*Appellee (Plaintiff below).*

Appeal from the Marion Superior Court, No. 49D07-0511-PL-045446
The Honorable Gerald Zore, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 49A04-0702-CV-106

**March 10, 2009**

**Boehm, Justice.**

We hold that when a claimant seeks excess damages from the Patient's Compensation Fund after obtaining a judgment or settlement from a health care provider in a medical malprac-

tice case, the Fund may introduce evidence of the claimant's preexisting risk of harm if it is relevant to establish the amount of damages, even if it is also relevant to liability issues that are foreclosed by the judgment or settlement.

## Facts and Procedural History

On March 6, 2002, thirty-four-year-old Jeffry Herbst suffered from a fever, congestion, nausea, loss of appetite, and decreased urine output. At 10:30 a.m. that day, Herbst's primary care physician diagnosed the condition as bilateral pneumonia and sent Herbst to the hospital, where he died at 9:00 that night. An autopsy determined that Herbst died of fulminant myocarditis, an inflammation of the heart characterized by acute and severe onset.

Herbst's Estate sought to bring a wrongful death action against the primary care physician, the physician's employer, and the hospital. Both the physician and the hospital are qualified health care providers under the Medical Malpractice Act. That statute provides that before a claim for negligence may be brought against a qualified provider, the proposed complaint must be submitted to a medical review panel. The Estate's proposed complaint alleged that the health care providers failed to comply with the appropriate standard of care in assessing and treating Herbst's condition and that this failure was a factor in Herbst's death. The medical review panel determined that the primary care physician had failed to meet the appropriate standard of care, but the failure was not a factor in Herbst's death. The panel found that the hospital met the appropriate standard of care, and made no finding regarding the physician's employer.

Under the Medical Malpractice Act, the liability of each qualified health care provider is limited to $250,000. Additional damages may be recovered from the Patient's Compensation Fund under conditions explained in more detail below. Herbst's Estate settled with the primary care physician and the hospital under an agreement that permitted access to the Fund.

The Estate then brought this action, seeking the statutory maximum in additional damages from the Patient's Compensation Fund. In Cahoon v. Cummings, 734 N.E.2d 535, 541 (Ind. 2000), we held that damages for negligently causing an increased risk of harm are "proportional to the increased risk attributable to the defendant's negligent act or omission." The Estate anticipated that the Fund would invoke this doctrine and contend that the damages from Herbst's

2

death were only a fraction, if any, of the total dollar value placed on the death because Herbst's condition was likely fatal irrespective of any malpractice. Seeking to present this issue, the Estate moved for partial summary judgment, requesting a "preliminary determination of the law applicable," specifically that

> (a) the Court will determine the amount of damages, if any, due to the plaintiff, not whether the health care provider defendants are liable for the compensable damages alleged; (b) the Indiana Patient's Compensation Fund (PCF) may not litigate any issues of liability or proximate causation, which are deemed established by settlement with the health care provider defendants; and (c) the question presented is the amount of the compensable damages alleged, not the liability for, or the proximate cause of, such damages.

The Fund responded that it was not seeking to relitigate whether the providers were liable for Herbst's death, but rather challenged the amount of damages attributable to the providers' conduct. The trial court granted the Estate's motion without explanation and denied the Fund's request to certify the order for interlocutory appeal.

At a bench trial, the Fund attempted to introduce expert testimony that even with proper care, Herbst had a less than ten percent chance of surviving the hospitalization, and had he survived, he would have been unable to return to work. The trial court excluded this evidence. The trial court found that the "evidence establishes that the damages of the Estate and the beneficiaries, including funeral and burial expenses, loss of earnings, loss of services, and loss of love and affection and parental guidance would exceed the sum of $2,500,000.00," and awarded the Estate the statutory maximum of $1 million.

The Fund appealed, arguing that the trial court erred in granting the partial summary judgment and also in excluding the expert testimony. The Court of Appeals affirmed the trial court in an opinion discussed below. Atterholt v. Herbst, 879 N.E.2d 1221, 1227 (Ind. Ct. App. 2008). We granted transfer and reverse in part.

**Standards of Review**

We review a summary judgment order de novo. Lean v. Reed, 876 N.E.2d 1104, 1107 (Ind. 2007). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). We

grant relief from a trial court's erroneous exclusion of evidence only when the error affects "the substantial rights of the parties." T.R. 61.

## Liability and Damages for Medical Malpractice

Under the Indiana Medical Malpractice Act, the total recovery in a medical malpractice action is limited to $1,250,000 per "injury or death." The Act caps a health care provider's malpractice liability at $250,000 per occurrence if the provider maintains sufficient insurance and pays the required surcharge to the Patient's Compensation Fund. Ind. Code §§ 34-18-3-1, -14-3(b) (2004). The Fund is financed by the surcharges collected from providers throughout the state and pays "excess damages." Recovery of excess damages from the Fund is allowed only after a health care provider or the provider's insurer has paid the first $250,000, id. § 34-18-15-3(1), or made a settlement in which the sum of the present cash payment and cost of future periodic payments exceeds $187,000. Id. § 34-18-14-4(b). Multiple providers' cash payments and contributions to a periodic payments agreement are aggregated for purposes of the $187,000 requirement. Id. § 34-18-14-4(c). If the Fund and claimant cannot agree on the amount to be paid from the Fund, the court must hold a hearing to "determine the amount for which the fund is liable." Id. § 34-18-15-3(4)–(5). In determining this amount, "the court shall consider the liability of the health care provider as admitted and established." Id. § 34-18-15-3(5).

In this case, the Estate filed a petition to access the Fund after settling with the health care providers under an agreement in which the providers contributed a total of $187,001 in cash and payments to purchase an annuity. The Estate and the Fund dispute the meaning of the statutory provision that "liability" is to be treated as "established" by the settlement. The Estate argues that "liability" includes causation and the statute therefore precludes the Fund from introducing evidence related to causation issues. We understand the Estate's contention to embrace both causation in fact and scope of liability, sometimes described as proximate cause. The Estate thus argues that any evidence of Herbst's risk of death bears on causation—whether the death results from malpractice—and is therefore precluded. The Fund responds that its evidence is admissible because it is relevant to the amount of damages for which it is liable.

The Medical Malpractice Act does not define "liability." However, the Act provides that undefined legal terms have the meaning consistent with the common law. I.C. § 34-18-2-2. Ac-

4

cording to Black's Law Dictionary (8th ed. 2004), liability is the "quality or state of being legally obligated or accountable." To say that one is "liable" does not establish the amount of damages. In this case evidence of Herbst's underlying risk of death whether or not he was properly treated is relevant to both liability—whether malpractice caused his death—and to damages—the amount for which the Fund is responsible. For this reason, it is admissible and its exclusion was error.

Prior cases are consistent with our holding today. The plaintiff relies principally on Dillon v. Glover, 597 N.E.2d 971 (Ind. Ct. App. 1992), trans. denied. In Glover, a physician negligently failed to diagnose the plaintiff's lung cancer from an initial x-ray, and the patient died. Id. at 972. The patient's estate brought a wrongful death claim against the physician. The patient's estate settled with the physician for the statutory maximum and then pursued excess damages from the Patient's Compensation Fund. Id. At the trial on excess damages, evidence established that had the cancer been diagnosed properly, the patient would have had a thirty percent chance to live five years, rather than the eight percent chance he had when the cancer was actually diagnosed. Id. The Fund argued that because the patient never had a greater than fifty percent chance of survival, the physician did not proximately cause the patient's death, and the patient's Estate was not entitled to any excess damages. Id. The Court of Appeals held that this argument was impermissible because the settlement established liability, which included the issue of whether the physician's negligence proximately caused the patient's damages. Id. at 973. The Court of Appeals expressly did not decide an issue of liability—whether increased risk of harm is a compensable injury in Indiana. Id. at 972. Moreover, the Court of Appeals noted that the Fund was free to argue regarding the correct standard for compensation of the injury. Id. at 973–94. The issue presented here—the extent of damages—was thus not addressed.

The liability issue left open in Glover was decided in Mayhue v. Sparkman, 653 N.E.2d 1384, 1388 (Ind. 1995), where we held that a plaintiff may bring a medical malpractice claim against a negligent doctor even if the patient had a greater than fifty percent chance of harm in the absence of malpractice. We adopted Section 323 of the Restatement (Second) of Torts and explained the proper approach to such claims: "when a plaintiff proves negligence and an increase in the risk of harm, the jury is permitted to decide whether the medical malpractice was a substantial factor in causing the harm suffered by the plaintiff." Mayhue, 653 N.E.2d at 1388.

Therefore, in a Mayhue claim, evidence of increased risk of harm is relevant to establish the health care provider's liability.

Evidence of increased risk of harm is also relevant to valuation of damages. As noted in Glover, although the Fund was precluded from challenging liability, it was free to challenge the trial court's finding as to damages, presumably by offering evidence of the patient's underlying risk of harm. 597 N.E.2d at 973–74. This was spelled out in Cahoon v. Cummings, 734 N.E.2d 535, 541 (Ind. 2000), where we held that "upon a showing of causation under Mayhue, damages are proportional to the increased risk attributable to the defendant's negligent act or omission." This principle applies to the plaintiff's claim here. In response to the Estate's summary judgment motion, the Fund designated deposition testimony from each member of the medical review panel that Herbst would have died regardless of the treatment he received. If so, although causation in fact is no longer in issue, the damages would be zero because the negligent act increased the probability of death by zero percent. At trial when the evidentiary issue was presented, according to the Fund's offer to prove, the Fund's witness would testify that Herbst had only a ten percent chance of survival, and if he lived would never be able to work. If that is the case, any malpractice by either provider increased his chance of harm by no more than ten percent, and the Fund is liable for only ten percent of the value of his survival. Moreover, if with proper care Herbst still had no chance of working in the future, no lost wages are recoverable from the Fund.

If the physician and hospital were not qualified providers, this reasoning would apply to the Estate's claim under basic tort principles. I.C. § 34-18-3-1. Under tort law, liability is established if the defendant's negligence causes the plaintiff's damages, but the extent of damages is limited to the damage caused by the defendant. If the claim is for increased risk of harm, as it is in Herbst's case if the Fund's expert is correct, recoverable damages are the dollar value of the total harm suffered multiplied by the percentage of the increased risk of harm attributable to the defendant's negligence. See generally Joseph H. King, Jr., Causation, Valuation, and Chance in Personal Injury Torts Involving Preexisting Conditions and Future Consequences, 90 Yale L.J. 1353 (1981). The Medical Malpractice Act does not change this calculus. In effect the Estate's claim is that it can recover under the Medical Malpractice Act the full value of Herbst's death even though that loss would be only ten percent compensable if the Medical Malpractice Act did not apply. As already explained, we think the language of the Medical Malpractice Act does not

6

support the Estate's position, but we also observe that the Act was plainly not intended to expand recovery for medical malpractice. See Johnson v. St. Vincent Hosp., Inc., 273 Ind. 374, 379–80, 404 N.E.2d 585, 589–90 (1980) (describing events leading to Medical Malpractice Act).

In this case, the Court of Appeals affirmed the trial court and held that the Fund's argument and evidence were inadmissible. Atterholt v. Herbst, 879 N.E.2d 1221, 1227 (Ind. Ct. App. 2008). The Court of Appeals reasoned that evidence of increased risk of harm would be relevant to establishing causation under Mayhue, but was irrelevant where causation was established by settlement as it was in Glover. The Court of Appeals recognized the "potential for unjust outcomes" but concluded that this was not a problem because "[i]f a patient has only a small chance of survival . . . healthcare providers should not be overly eager to settle such claims." Id.

We respectfully disagree with the Court of Appeals. Relevance is not an either-or proposition. Evidence of increased risk of harm can be relevant to both causation under Mayhue and valuation of damages. Here, the settlement between the Fund and the health care providers precluded consideration of causation, but left open the amount of damages. The trial court therefore correctly granted partial summary judgment restating the statute and the Glover holding, but erred in excluding the Fund's evidence regarding Herbst's risk of death before any malpractice.

Second, we disagree that providers' resistance to settlement provides an adequate safeguard against invasion of the Fund. On the contrary, a health care provider would presumably readily settle a case such as Herbst's where there are potentially large damages. Even if, as the Fund argues, only ten percent of Herbst's more than $2,500,000 damages were caused by negligence, a health care provider would face a judgment of at least $250,000 plus the substantial cost of defense. Even though liability is capped at $250,000, a provider has substantial incentive to settle for that amount, and even more to enter into a settlement for periodic payments costing $187,000.

7

**Conclusion**

Because the statement of law sought by the Estate at summary judgment was correct on its face, we affirm the trial court's grant of partial summary judgment. The case is remanded for a determination of the extent of the Fund's liability consistent with the law as explained in this opinion.

Shepard, C.J., and Dickson, Sullivan, and Rucker, JJ., concur.