

**FILED**

Jun 14 2023, 9:24 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Eric S. Pavlack
Colin E. Flora
Pavlack Law, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES

James L. Hough
Alyssa Stamatakos
Eichhorn & Eichhorn, LLP
Hammond, Indiana

ATTORNEYS FOR INTERVENOR
COMMISSIONER, INDIANA
DEPARTMENT OF INSURANCE AS
ADMINISTRATOR OF THE INDIANA
PATIENT'S COMPENSATION FUND

A. Richard M. Blaiklock
Wade D. Fulford
Michael D. Heavilon
Lewis Wagner, LLP
Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE
INDIANA HOSPITAL ASSOCIATION

Angela M. Smith
Matthew M. Schappa
John D. French
Hall Render Killian Heath &
Lyman
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Linda Gierek and Stephen Gierek, on behalf of themselves and all others similarly situated,

*Appellants-Plaintiffs,*

and

K.W., G.S., L.P., L.W., S.B., S.J., C.D., S.S., E.M., P.H., C.M., A.S., and M.S.,

*Intervenors-Plaintiffs,*

v.

Anonymous 1, Anonymous 2, and Anonymous 3,

*Appellees-Defendants,*

and

Amy L. Beard, Commissioner of the Indiana Department of Insurance as Administrator of the Indiana Patient's Compensation Fund,

*Intervenor-Defendant*

_____

Amy L. Beard, Commissioner of the Indiana Department of Insurance as Administrator of

June 14, 2023

Court of Appeals Case No. 22A-CT-1225

Interlocutory Appeal from the Elkhart Superior Court

The Honorable Stephen R. Bowers, Judge

Trial Court Cause Nos. 20D02-1911-CT-243 consolidated with 20D05-2002-CT-25

the Indiana Patient's
Compensation Fund,

*Counter/Cross-Plaintiff,*

v.

Linda Gierek and Stephen
Gierek, on behalf of themselves
and all others similarly situated,

*Appellants-Counterdefendants,*

and

K.W., G.S., L.P., L.W., S.B.,
S.J., C.D., S.S., E.M., P.H.,
C.M., A.S., and M.S.,

*Counterdefendants,*

Anonymous 1, Anonymous 2,
and Anonymous 3,

*Appellees-Cross-claim Defendants*

—————————————————

Cheyanne Bennett, individually
and on behalf of all others
similarly situated,

*Plaintiffs,*

v.

Anonymous Healthcare
Provider 1, Anonymous
Healthcare Provider 2,
Anonymous Healthcare
Provider 3, Anonymous
Healthcare Provider 4, and John
Doe 1,

*Defendants,*

and

Amy L. Beard, Commissioner
of the Indiana Department of
Insurance as Administrator of
the Indiana Patient's
Compensation Fund,

*Intervenor-Defendant*

_____

Amy L. Beard, Commissioner
of the Indiana Department of
Insurance as Administrator of
the Indiana Patient's
Compensation Fund,

*Counter/Cross-Plaintiff,*

v.

Cheyanne Bennett, individually
and on behalf of all others
similarly situated,

*Counterdefendants,*

and

Anonymous Healthcare
Provider 1, Anonymous
Healthcare Provider 2,
Anonymous Healthcare
Provider 3, Anonymous
Healthcare Provider 4, and John
Doe 1,

*Cross-Defendants*

**Crone, Judge.**

## Case Summary

Linda Gierek and over a thousand other patients who underwent surgical procedures at a hospital operated by Anonymous 1, Anonymous 2, and Anonymous 3 (the Hospital) were informed by the Hospital that one of its technicians had failed to complete a step in the procedure for sterilizing certain surgical instruments and that, as a result, the patients may have been exposed to infectious diseases. Linda and her husband Stephen filed a class-action complaint with the trial court and a proposed class-action complaint with the commissioner of the Indiana Department of Insurance (DOI) asserting claims against the Hospital for negligent infliction of emotional distress, negligence, and, in the alternative, medical malpractice. The Giereks also filed motions requesting the certification of two classes, one for the Hospital's patients and one for the patients' spouses. Additional plaintiffs were permitted to intervene in the Giereks' action, which was consolidated with a later-filed class action brought by Cheyanne Bennett, who filed her own motion for class certification. Where appropriate, we refer to the Giereks and Bennett collectively as Plaintiffs.

The Indiana Patient's Compensation Fund (PCF) intervened and filed a motion for partial summary judgment asserting that the Indiana Medical Malpractice

Act (MMA) does not apply to Plaintiffs' claims. Plaintiffs filed statements in support of the PCF's motion. The Hospital filed a cross-motion for partial summary judgment asserting that the MMA does apply to Plaintiffs' claims. The trial court entered an order denying the PCF's motion for partial summary judgment and granting the Hospital's cross-motion for partial summary judgment, ruling that the MMA applies to Plaintiffs' claims. The court also denied Plaintiffs' motions for class certification on the basis that it did not have subject matter jurisdiction to grant them as a preliminary determination under the MMA.

[3] In this interlocutory appeal, Plaintiffs contend that the trial court's rulings are erroneous. We hold that the trial court did not err in concluding that the MMA applies to Plaintiffs' claims. We also hold that the trial court erred in concluding that it did not have subject matter jurisdiction to grant Plaintiffs' motions to certify a class as a preliminary determination under the MMA. Consequently, we affirm in part, reverse in part, and remand for further proceedings.

## Facts and Procedural History[1]

The relevant facts are undisputed. Linda had surgery at the Hospital in June 2019. In November 2019, the Hospital sent letters to 1,181 of its surgical patients, including Linda, that read in pertinent part as follows:

> We are writing to you today because you had a surgical procedure at [the Hospital] between April and September 2019. During this time, one of our seven surgical instrument sterilization technicians did not complete one step in a multistep sterilization process with certain surgical instruments. The surgical instruments in question were still treated with our usual chemical disinfection and machine sterilization processes which include a wide margin of safety; however, such instruments may or may not have been completely sterile. While we believe the risk is extremely low, out of the utmost caution, we want to notify you that it is possible that this action may have exposed you to infections such as the hepatitis C virus, hepatitis B virus and human immunodeficiency virus (HIV). To be very conservative, we want to offer patients free lab testing services to verify the absence or presence of any of these viruses.

Appellants' App. Vol. 2 at 131. The surgical instruments at issue contained straw-like tubes called lumens, which the technician failed to clean out with a brush as required by step six of the nine-step sterilization process.

---

[1] We held oral argument in the magnificent nineteenth-century St. Joseph Circuit Court courtroom on May 11, 2023. We thank the Honorable John E. Broden and his staff for their assistance and hospitality, and we thank counsel for their capable advocacy. We also extend our appreciation to the St. Joseph County Bar Association for its involvement with the post-argument continuing legal education program.

Later that month, Linda filed both a class-action complaint against the Hospital in the trial court under cause number 20D02-1911-CT-243 (Cause 243) and a proposed class-action complaint against the Hospital with the DOI commissioner. She then filed with the trial court a motion requesting certification of a proposed class composed of patients to whom the Hospital had sent a similar letter or to whom the Hospital had not sent such a letter but who underwent surgery or other procedures that involved the use of surgical instruments between April and September 2019 (Proposed Class 1).

In February 2020, Linda filed a four-count amended class-action complaint, which added Stephen as both a plaintiff and a representative of a second proposed class of persons who are or were married to members of Proposed Class 1 after the latter underwent surgery (Proposed Class 2). Count 1, asserted on behalf of Proposed Class 1, is captioned as a claim of negligent infliction of emotional distress. Count 1 alleges that the Hospital had "a professional and legal duty to perform [surgical] procedures in a safe, sterile, reasonable, and professional manner" and that the Hospital breached that duty by "using surgical instruments that may not have been properly sterilized[,]" which "constituted direct physical impacts" to the plaintiffs. *Id*. at 158-59. As "a direct and proximate result" of those breaches, the plaintiffs "were potentially exposed to innumerable infectious diseases, including potential incurable and fatal diseases[,]" and they "each suffered extreme and serious emotional distress and trauma as the result of" the Hospital's "negligent conduct[.]" *Id*. at 159.

Count 2, asserted on behalf of Proposed Class 1, is captioned as a claim of negligence based on the Hospital's use of "surgical instruments that may not have been properly sterilized." *Id*. at 160.

Count 3, which purports to be asserted only on behalf of Proposed Class 1, is captioned as a medical malpractice claim, pleaded in the alternative to the negligence claims. Count 3 alleges that the Hospital's use of "surgical instruments that were not properly sterilized … failed to meet the applicable standard of medical care"; that, "[a]s a direct and proximate result of" the malpractice, members of Proposed Class 1 "suffered and will continue to suffer extreme emotional distress and will incur medical testing and other expenses"; and that, as spouses of those members, the members of Proposed Class 2 were "potentially exposed to the same innumerable infectious diseases" and "suffered extreme and serious emotional distress and trauma, and have/will incur medical testing and other expenses as the result of" the Hospital's negligent conduct. *Id*. at 161.

Finally, Count 4, asserted on behalf of Proposed Class 2, is captioned as a negligence claim and alleges that the Hospital's aforementioned breaches of its "professional and legal duty" caused the aforementioned injuries to the members of Proposed Class 2. *Id*. at 162.

In March 2020, additional individual plaintiffs were permitted to intervene in the Giereks' action. Later that month, pursuant to Indiana Trial Rule 42(D), the Giereks and the Hospital filed a joint motion to consolidate the Giereks' action

with a later-filed class action brought by Bennett under cause number 20D05-2002-CT-25. The trial court consolidated the actions under Cause 243, and the PCF was permitted to intervene.[2] In April 2020, the Giereks filed a supplemental motion requesting certification of Proposed Class 2. Bennett later filed her own motion for class certification.

[11] In May 2020, the PCF filed a counterclaim and a cross-claim requesting a judgment declaring that the Giereks' claims "arise out of ordinary negligence under common law, and therefore, the MMA does not apply to said claims." Appellants' App. Vol. 3 at 117. The Hospital and the PCF filed a joint motion to stay class certification proceedings pending a ruling on the MMA issue, which the trial court granted in August 2020.

[12] In March 2021, the PCF filed a motion for partial summary judgment asserting that the MMA does not apply to Plaintiffs' claims. Plaintiffs filed statements in support of the PCF's motion. Later that month, the Hospital filed a cross-motion for partial summary judgment asserting that the MMA does apply to Plaintiffs' claims. In April 2022, after a hearing, the trial court entered an order denying the PCF's motion and granting the Hospital's cross-motion, concluding that the MMA applies to Plaintiffs' claims. The court also denied Plaintiffs' motions for class certification on the basis that it did not have subject matter

---

[2] The PCF was created for the purpose of paying, up to statutory limits, amounts in excess of the liability limits established for health care providers under the MMA. Ind. Code §§ 34-18-6-1, 34-18-14-3, 34-18-15-3. The PCF "is financed by the surcharges collected from providers throughout the state" and is administered by the DOI commissioner. *Atterholt v. Herbst*, 902 N.E.2d 220, 222 (Ind. 2009); Ind. Code § 34-18-6-1.

jurisdiction to grant them as a preliminary determination under the MMA. The Giereks sought and received permission to bring this discretionary interlocutory appeal of the trial court's order pursuant to Indiana Appellate Rule 14 and filed a notice of appeal. Bennett filed a notice of joinder in the Giereks' appellate brief.[3] The intervenor plaintiffs in the Giereks' action filed a notice of non-participation in this appeal. The PCF does not appeal the trial court's ruling on the MMA issue and asks us to affirm the court's ruling on the class-certification issue.

## Discussion and Decision

## Section 1 – The MMA applies to Plaintiffs' claims.

[13] We first consider whether the trial court erred in concluding that the MMA applies to Plaintiffs' claims. We stand in the trial court's shoes and review its ruling de novo. *Doe v. Ind. Dep't of Ins.*, 194 N.E.3d 1197, 1199 (Ind. Ct. App. 2022), *trans. denied* (2023). "Summary judgment is appropriate 'if the designated evidentiary matter shows that there is no genuine issue as to any material fact

---

[3] *See* Ind. Appellate Rule 46(G) ("In cases involving more than one appellant or appellee, including cases consolidated for appeal, each party may file a separate brief, more than one party may join in any single brief, or a party may adopt by reference any part of any brief of any party."). Bennett did not file her own motions for bringing a discretionary interlocutory appeal or a notice of appeal, nor did she join in the Giereks' notice of appeal pursuant to Appellate Rule 9(C) ("If two (2) or more persons are entitled to appeal from a single judgment or order, they may proceed jointly by filing a joint Notice of Appeal. The joined parties may, thereafter, proceed on appeal as a single appellant."). Because the Hospital does not argue that the trial court's order should be summarily affirmed as to Bennett on this basis, we do not address this matter further. The Giereks have included Bennett's complaint and other filings in their appellants' appendix, and the Hospital states that Bennett, as did the Giereks, "alleged medical negligence arising from the failure to properly sterilize instruments and the use of those instruments in her surgery." Appellees' Br. at 13. To the extent that Bennett might have alleged different/additional facts and/or legal theories below, it is not our task to raise them on Bennett's behalf in this appeal.

and that the moving party is entitled to judgment as a matter of law.'" *Id*. (quoting Ind. Trial Rule 56(C)). "Further, '[w]hether a case is one of medical malpractice as defined by the MMA is a question [of law] for the court,' making the issue particularly suited for determination on summary judgment." *Id*. (first alteration in *Doe*) (quoting *Rossner v. Take Care Health Sys., LLC*, 172 N.E.3d 1248, 1255 (Ind. Ct. App. 2021), *trans. denied*).

[14] "Because we review a summary judgment ruling de novo, a trial court's findings and conclusions offer insight into the rationale for the court's judgment and facilitate appellate review but are not binding on this court." *S&C Fin. Grp., LLC v. Khan*, 172 N.E.3d 280, 287 (Ind. Ct. App. 2021), *trans. denied*. "Additionally, we are not constrained by the claims and arguments presented to the trial court, and we may affirm a summary judgment ruling on any theory supported by the designated evidence." *Id*. Cross-motions for summary judgment do not alter our standard of review, as we consider each motion separately to determine whether the movant is entitled to judgment as a matter of law. *Flannagan v. Lakeview Loan Servicing, LLC*, 184 N.E.3d 691, 696 (Ind. Ct. App. 2022). "[T]he party that lost in the trial court has the burden of persuading us that the trial court erred." *Solomon v. Lindsey*, 163 N.E.3d 302, 307 (Ind. Ct. App. 2020).

[15] "In interpreting statutes, our primary objective is to ascertain and give effect to the intent of the legislature. Where the intent is clearly expressed by the language of the legislation, we may not construe the statute to mean something other than what it plainly states on its face." *Bova v. Roig*, 604 N.E.2d 1, 3 (Ind.

Ct. App. 1992) (citation omitted). "When the General Assembly has defined a statutory term, we are bound by its definition." *WTHR-TV v. Hamilton Se. Schs.*, 178 N.E.3d 1187, 1191 (Ind. 2022). We give "undefined 'words their plain meaning and consider the structure of the statute as a whole.'" *Id*. (quoting *ESPN, Inc. v. Univ. of Notre Dame Police Dep't*, 62 N.E.3d 1192, 1195 (Ind. 2016)). "[I]t is just as important to recognize what a statute does not say as it is to recognize what it does say. A court may not read into a statute that which is not the expressed intent of the legislature." *Rush v. Elkhart Cnty. Plan Comm'n*, 698 N.E.2d 1211, 1215 (Ind. Ct. App. 1998) (citation omitted), *trans. denied*.

[16] "The MMA, which is applicable to acts of malpractice occurring after June 30, 1975, set up a system under which health care providers meeting qualifications set forth in the act … would enjoy certain benefits, including a limitation on liability." *In re Stephens*, 867 N.E.2d 148, 150 (Ind. 2007) (citation omitted). The MMA applies to a patient who has a claim "for bodily injury or death on account of malpractice[.]" Ind. Code § 34-18-8-1. It is undisputed that Plaintiffs were "patients" of the Hospital and that the Hospital is a "health care provider" for purposes of the MMA. *See* Ind. Code §§ 34-18-2-22 (defining "patient" as "an individual who receives or should have received health care from a health care provider, under a contract, express or implied, and includes a person having a claim of any kind, whether derivative or otherwise, as a result of alleged malpractice on the part of a health care provider"), 34-18-2-14(1) (defining "health care provider" in pertinent part as "a limited liability company [or a] corporation … licensed or legally authorized by this state to provide

health care or professional services as a … hospital").[4] The MMA does not define "bodily injury," but whether Plaintiffs suffered bodily injury is not at issue here.[5]

[17] "Malpractice" is "a tort or breach of contract based on health care **or** professional services that were provided, or that should have been provided, by a health care provider, to a patient." Ind. Code § 34-18-2-18 (emphasis added). A "tort" is "a legal wrong, breach of duty, or negligent or unlawful act or omission proximately causing injury or damage to another." Ind. Code § 34-18-2-28. "Health care" is "an act or treatment performed or furnished, or that should have been performed or furnished, by a health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." Ind. Code § 34-18-2-13. The MMA does not define the term "professional services."

[18] The Plaintiffs' complaints allege that the Hospital committed tortious conduct. The contested issue here is whether that conduct was malpractice, i.e., whether that conduct was either "health care" or "professional services" that were provided, or should have been provided, by the Hospital to Plaintiffs. Ind. Code § 34-18-2-18. To determine whether the MMA is applicable, courts look to the

---

[4] According to the Giereks' amended complaint, both Anonymous 1 and Anonymous 2 are Indiana nonprofit corporations, and Anonymous 3 is an Indiana limited liability company. Appellants' App. Vol. 2 at 144.

[5] As the Giereks' amended complaint suggests, a "physical impact" is required for the plaintiff to recover emotional-distress damages on a negligence-based claim. *Cmty. Health Network, Inc. v. McKenzie*, 185 N.E.3d 368, 379 (Ind. 2022).

substance of a claim, not its label. *Robertson v. Anonymous Clinic*, 63 N.E.3d 349, 359 (Ind. Ct. App. 2016), *trans. denied* (2017). As indicated above, the substance of Plaintiffs' claims is that the Hospital owed Plaintiffs a duty to perform surgical procedures with sterile instruments; that the Hospital breached that duty by performing surgical procedures with instruments that may not have been properly sterilized, which may have exposed Plaintiffs to infectious diseases; and that the Hospital's breach proximately caused them to suffer emotional distress. Without question, a surgical procedure is the very essence of "health care" as defined by the MMA: "an act or treatment performed or furnished … by a health care provider … to … a patient during the patient's medical care [or] treatment[.]" Ind. Code § 34-18-2-13. Because the alleged torts are based on health care that was provided by the Hospital to Plaintiffs, the MMA clearly applies to Plaintiffs' claims. Plaintiffs' arguments to the contrary are unconvincing because they rely on either inapplicable premises-liability

cases or language that does not appear in the MMA.[6] Accordingly, we affirm the trial court's ruling on this issue.

## Section 2 – A trial court has subject matter jurisdiction to grant a motion for class certification as a preliminary determination under the MMA.

[19] We now consider Plaintiffs' argument that the trial court erred in concluding that it did not have subject matter jurisdiction to grant a motion for class certification as a preliminary determination under the MMA. Generally speaking, "[t]he MMA grants authority over medical malpractice actions first to a medical review panel, which must render an opinion on a claimant's proposed complaint before the claimant can sue a health-care provider in court." *Cmty. Health Network, Inc. v. McKenzie*, 185 N.E.3d 368, 376 (Ind. 2022). *See* Ind. Code § 34-18-8-4 (providing that, with certain exceptions not relevant here, "an action against a health care provider may not be commenced in a

---

[6] *See, e.g.*, Appellants' Br. at 27 (asserting that MMA does not apply when tortious conduct is "within the understanding of laymen" and that using unsterile surgical instruments is "a textbook example" thereof). The MMA contains no "laymen's understanding" exception, and our supreme court has observed that "not all medical malpractice cases are so technical that they require expert testimony[.]" *Harris v. Raymond*, 715 N.E.2d 388, 394 (Ind. 1999); *see also Syfu v. Quinn*, 826 N.E.2d 699, 705 (Ind. Ct. App. 2005) (citing several medical malpractice cases in which courts "held that expert testimony [was] not required" to establish that defendant's conduct fell below applicable standard of care). In its order, the trial court correctly observed that

> [n]early any step in the provision of health care can be broken down far enough that a lay person could perform it. For example, few would argue that if a surgeon amputates the right leg when it is the left leg that should have been removed, the patient's claim would fall under the [MMA]. If the surgeon delegates to a staff member the task of marking the correct leg for amputation, and the surgeon removes the wrong leg, the patient's claim would still sound in medical malpractice, even though advanced medical training and skill is not required to know the difference between right and left.

Appealed Order at 13.

court in Indiana before (1) the claimant's proposed complaint has been presented to a medical review panel …; and (2) an opinion is given by the panel").

Nonetheless, as happened in this case, "a claimant may commence an action in court for malpractice at the same time the claimant's proposed complaint is being considered by a medical review panel" if the "complaint filed in court [does] not contain any information that would allow a third party to identify the defendant[.]" Ind. Code § 34-18-8-7(a). Pursuant to this statute, the "claimant is prohibited from pursuing the action [and the] court is prohibited from taking any action except setting a date for trial, an action under IC 34-18-8-8 [the filing of a Trial Rule 41(E) motion to dismiss by the DOI commissioner], or an action under IC 34-18-11 [the filing of a motion for preliminary determination]; until IC 34-18-8-4 has been satisfied." *Id.*

As Section 34-18-8-7(a) indicates, the MMA "does give a trial court limited authority to assert jurisdiction over threshold issues while a proposed complaint is pending before the medical review panel." *Lorenz v. Anonymous Physician #1*, 51 N.E.3d 391, 396 (Ind. Ct. App. 2016). Indiana Code Section 34-18-11-1 provides,

> (a) A court having jurisdiction over the subject matter and the
> parties to a proposed complaint filed with the commissioner
> under this article may, upon the filing of a copy of the proposed
> complaint and a written motion under this chapter, do one (1) or
> both of the following:

(1) preliminarily determine an affirmative defense or issue of law or fact that may be preliminarily determined under the Indiana Rules of Procedure; or

(2) compel discovery in accordance with the Indiana Rules of Procedure.

(b) The court has no jurisdiction to rule preliminarily upon any affirmative defense or issue of law or fact reserved for written opinion by the medical review panel under IC 34-18-10-22(b)(1), IC 34-18-10-22(b)(2), and IC 34-18-10-22(b)(4).

(c) The court has jurisdiction to entertain a motion filed under this chapter only during that time after a proposed complaint is filed with the commissioner under this article but before the medical review panel gives the panel's written opinion under IC 34-18-10-22.

(d) The failure of any party to move for a preliminary determination or to compel discovery under this chapter before the medical review panel gives the panel's written opinion under IC 34-18-10-22 does not constitute the waiver of any affirmative defense or issue of law or fact.

[22] Indiana Code Section 34-18-10-22(b) states,

(b) After reviewing all evidence and after any examination of the panel by counsel representing either party, the panel shall, within thirty (30) days, give one (1) or more of the following expert opinions, which must be in writing and signed by the panelists:

(1) The evidence supports the conclusion that the defendant or defendants failed to comply with the appropriate standard of care as charged in the complaint.

(2) The evidence does not support the conclusion that the defendant or defendants failed to meet the applicable standard of care as charged in the complaint.

(3) There is a material issue of fact, not requiring expert opinion, bearing on liability for consideration by the court or jury.

(4) The conduct complained of was or was not a factor of the resultant damages. If so, whether the plaintiff suffered:

> (A) any disability and the extent and duration of the disability; and

> (B) any permanent impairment and the percentage of the impairment.

[23] The preeminent case outlining the parameters of a trial court's jurisdiction under Indiana Code Section 34-18-11-1 (formerly Section 16-9.5-10-1) is *Griffith v. Jones*, 602 N.E.2d 107 (Ind. 1992).[7] Patient Jon Jones died after a femoral angiography performed by Dr. Griffith, and Jon had not been "advised that there was a risk of death associated with the procedure." *Id*. at 108. The personal representative of Jon's estate, Carol Jones, filed a proposed complaint with the DOI requesting the convening of a medical review panel and alleging "that Dr. Griffith failed to obtain the informed consent of Jon Jones." *Id*. at 109. Carol then filed a motion for preliminary determination with the trial court

---

[7] Indiana Code Section 16-9.5-10-1 is substantially similar in all relevant respects to Indiana Code Section 34-18-11-1, which was enacted in 1998.

requesting that it order the medical review panel "to find that there were material issues of fact not requiring expert opinion bearing on liability for consideration by the court or jury as regards the issue of informed consent[,]" construe the term "factor" as used in what is now Indiana Code Section 34-18-10-22(b)(4), and "enter partial summary judgment in her favor on the issue of informed consent." *Id*. The trial court denied the motion for partial summary judgment but otherwise granted Carol's motion for preliminary determination.

[24] On transfer, our supreme court determined sua sponte that "the trial court exceeded its authority to preliminarily determine the law in this case." *Id*. at 110. The court stated,

> In view of the fact that the legislature clearly intended for the medical review panel to function in an informal manner in rendering its expert medical opinion, we believe that the legislature did not simultaneously intend to empower trial courts to dictate to the medical review panel concerning either the content of the panel's opinion or the manner in which the panel arrives at its opinion, or the matters that the panel may consider in arriving at its opinion. In other words, the grant of power to the trial court to preliminarily determine matters is to be narrowly construed.
>
> A narrow construction of this grant of power leads to the conclusion that the legislature specifically limited a trial court's power on motions for a preliminary determination to two functions, both governed by the Indiana Trial Rules. First, the court can determine either affirmative defenses or issues of law or fact that may be preliminarily determined under the Indiana Trial Rules and, secondly, it may compel discovery in accordance with the Indiana Trial Rules. Therefore, we must turn to the Indiana Trial Rules to further define the courts' power. Our review of the

rules reveals that Trial Rule 8(C) contains a listing of affirmative defenses, Trial Rule 12(B) and (C) sets forth a listing of matters which can be preliminarily determined by motion, and Trial Rules 26 through 37, inclusively, contain the discovery rules. We hold that Ind. Code § 16-9.5-10-1 specifically limits the power of the trial courts of this State to preliminarily determining affirmative defenses under Trial Rules, deciding issues of law or fact that may be preliminarily determined under Trial Rule 12(D), and compelling discovery pursuant to Trial Rules 26 through 37, inclusively.

We further hold that the trial courts of this State do not have jurisdiction to instruct the medical review panel concerning definitions of terms and phrases used in the Medical Malpractice Act, the evidence that it may consider in reaching its opinion, or the form or substance of its opinion. In other words, the medical review panels should be allowed to operate in the informal manner contemplated by the legislature ….

*Id.* at 110-11.

In the appealed order in this case, the trial court cited *Griffith* in concluding that it "[did] not have jurisdiction at this stage of the proceedings to decide whether to grant … Plaintiffs' request for class certification." Appealed Order at 16. And both the Hospital and the PCF rely primarily on *Griffith* in arguing that the trial court properly denied Plaintiffs' motions for preliminary determination of class certification, which is governed by Indiana Trial Rule 23. *See* Ind. Trial Rule 23(A) ("One or more members of a class may sue or be sued as representative parties on behalf of all only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the

claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."), -(B) (listing other criteria for maintenance of class action).

[26] Plaintiffs point out, however, that "Rule 23 is related to one of the Rule 12(B) provisions" mentioned in *Griffith*, which may be determined as a preliminary matter pursuant to Trial Rule 12(D). Appellants' Br. at 54. *See* Ind. Trial Rule 12(D) ("Whether made in a pleading or by motion, the defenses specifically enumerated (1) to (8) in subdivision (B) of this rule … shall, upon application of any party or by order of court, be determined before trial unless substantial justice requires the court to defer hearing until trial."); Ind. Trial Rule 12(B) ("Every defense, in law or fact, to a claim for relief in any pleading … shall be asserted in the responsive pleading thereto if one is required; except that … the following defenses may be made by motion: … (7) Failure to join a party needed for just adjudication under Rule 19"); Ind. Trial Rule 19(D) ("This rule is subject to the provisions of Rule 23."). In short, "Rule 12(B)(7) directly incorporates Rule 19[,]" which in turn directly incorporates Rule 23.[8] Appellants' Br. at 54. Moreover, Plaintiffs observe that a class action is a

---

[8] Trial Rule 19(D) is entitled "Exception of Class Actions," and the Hospital argues that this phrase "excludes class actions from the purview of this rule." Appellees' Br. at 44. In response, Plaintiffs note that courts interpreting the Federal Rules of Civil Procedure, on which Indiana's Rules of Trial Procedure are based, have held that the two rules should be harmonized such that the joinder provisions of Rule 19 do not conflict with the class-action provisions of Rule 23, such as by "deferr[ing] ruling on joinder issues pending a decision on class certification." *Bartle v. TD Ameritrade Holdings Corp.*, No. 20-cv-00166, 2020 WL 9211182, at *2 (W.D. Mo. Aug. 7, 2020); *see Davis ex rel. Davis v. Ford Motor Co.*, 747 N.E.2d 1146, 1149 n.1 (Ind. Ct. App. 2001) (recognizing that "federal rules and case law are helpful in interpreting Indiana Trial Rules"), *trans. denied.*

"species" of "traditional joinder" that "merely enables" a court "to adjudicate claims of multiple parties at once, instead of in separate suits. And like traditional joinder, it leaves the parties' legal rights and duties intact and the rules of decision unchanged." *Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010). Finally, we note that Trial Rule 23(C) specifically states that the determination of whether an action is to be maintained as a class action should be made "[a]s soon as practicable after the commencement of" the action.

[27] Based on the foregoing, we conclude that the issue of whether to certify a proposed class is a matter that may be preliminarily determined by motion per Trial Rule 12(D) and -(B)(7). As long as an order granting a motion for class certification does not "instruct the medical review panel concerning … the evidence that it may consider in reaching its opinion, or the form or substance of its opinion[,]" *Griffith*, 602 N.E.2d at 111, it would not exceed the scope of the trial court's subject matter jurisdiction under Indiana Code Section 34-18-11-1.[9] Accordingly, we reverse the trial court's ruling on this issue and remand for a full consideration of Plaintiffs' motions for class certification. Because the trial court has not yet addressed the merits of the motions, and because the

---

[9] In *Ling v. Webb*, 834 N.E.2d 1137, 1144 (Ind. Ct. App. 2005), another panel of this Court, in addressing a statute-of-limitations issue, stated that "plaintiffs … who wish to proceed in a medical malpractice class action may file the proposed complaint with the trial court and request a preliminary determination of class certification, at the same time that such complaint is being considered by the medical review panel." Plaintiffs latch onto this statement and urge us to follow *Ling*. We decline to do so because of the different procedural posture and case analysis in *Ling*.

factual and procedural posture of this case may shift at any moment, we refrain from offering any guidance on the logistics of shepherding a class action through the review panel process. *See Harris v. Jones*, 143 N.E.3d 1012, 1018 n.4 (Ind. Ct. App. 2020) ("A cardinal principle of the judicial function is that courts should not issue advisory opinions but instead should decide cases only on the specific facts of the particular case and not on hypothetical situations.").

[28]     Affirmed in part, reversed in part, and remanded.


Robb, J., and Kenworthy, J., concur.